31056. NEWMAN v. THE STATE.
31057. HINTON v. THE STATE.

HALL, Justice.

Hinton and Newman appeal separately from their convictions of rape and sentence of eight years' imprisonment following a joint trial in November, 1974. The appeals raise, among others, issues concerning interrogation of deaf mutes; a warrantless search of an impounded automobile; and an oral "list" of witnesses

claimed to satisfy the defendants' right under Code Ann. § 27-1403 to a list of the state's witnesses against them.

The victim was seated in an automobile outside an Atlanta bar at approximately 1:00 a.m. on September 17, 1974, with her boyfriend who had passed out drunk, when two black males appeared and dragged her out of the automobile. Her male companion could not be roused by her screams nor by her pulling at him sufficiently to rip buttons off his shirt. The two assailants struck her on the head and forced her into their automobile, taking her some distance away where each raped her repeatedly over a period of about three hours, following which one forced her to commit an act of oral sodomy. They then returned her to the vicinity of the bar. She reported to the bar owner and to her boyfriend that she had been raped by two men she thought were deaf and dumb. She was taken to Grady Hospital for examination and treatment, and was interviewed there by detectives who testified at trial to her injuries and near hysteria. The victim told officers that the automobile in which she had been abducted was an older four door model, perhaps an early Plymouth, either green and white or orange and white, with a back seat lined with a distinctive sort of flowered paper.

Some four nights later the victim was again at the same bar and saw the two appellants enter, whereupon she recognized them as the rapists and telephoned police who arrived and arrested them. Both appellants are black deaf mutes. On the way to the station, the victim informed officers that an automobile she saw parked near the club appeared to be the one in which she had been abducted. This automobile was green and white, had four doors, and had distinctive flowered upholstery covering the back seat. It was dark at this time; the car was impounded, and no search was then made. The next morning Detective Rios, who had been told that the arresting officers thought they had seen blood on the outside of the door of the automobile, proceeded without a warrant to the impoundment lot where she saw what she thought was blood outside the left door. She opened the door and searched inside the automobile, finding what looked like more blood on the inside of the right rear door. She took scrapings of both these stains, and the scrapings were

analyzed and determined to be human blood type A. The victim's blood is type A. All this information concerning the scrapings, their analysis, and the victim's blood type was introduced at trial.

Police officers interrogated appellants following their arrests, but failed to comply with all the provisions of Code Ann. § 99-4002 (c) regarding the interrogation of deaf persons. The trial court ordered the results of the interrogation suppressed. One fact which officers learned through this interrogation was that Newman owned the automobile in question. The jury were never told this fact.

Appellants did not testify in their own behalf nor did they present any other evidence, though in the sentencing phase of the trial Hinton testified through an interpreter that he was not guilty.

Prior to trial, defense counsel moved pursuant to Code Ann. § 27-1403 for a list of witnesses. Three witnesses were identified on the indictment, and no question subsequently arose as to their testimony; but five additional names were provided defense counsel by the prosecutor in a telephone conversation held eight days prior to trial, and no written list of these names was ever provided. Additionally, two other witnesses testified at trial after the prosecutor stated in his place that their testimony was newly discovered. One witness, McBride, the owner of the bar, testified at trial though he was never named in any list, written or oral, and no statement was made that his testimony was newly discovered.

Appellants raise many of the same issues on their separate appeals, and these common points will be discussed first.

1. With reference to both appellants' enumerations of error on the general grounds, we note that it is the sufficiency of the evidence alone which concerns an appellate court after a verdict of guilty, and our only question is whether there is any evidence authorizing the verdict. *Ridley v. State,* 236 Ga. 147, 149 (223 SE2d 131) (1976).

The facts detailed above are adequate to show that the victim's account of the rape episode was sufficiently ˙corroborated by trial testimony of her outcry,

dishevelment, near hysteria and injury. See *Lynch v. State,* 234 Ga. 446 (216 SE2d 307) (1975). She identified Newman and Hinton in the courtroom as her attackers. The defense presented no evidence, and the state's case withstood cross examination. The verdict was authorized.

2. Appellants contend that the trial court erred in overruling their motion to suppress evidence of the blood scrapings. They argue that the scrapings were the result of a search which was illegal because warrantless and without exigent circumstances. The state urges the applicability of the plain view doctrine (see Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067) (1968)). However, the testimony did not identify scrapings by point of origin, and apparently scrapings from inside and outside the car were mingled and analyzed together.

Because the victim's description of the assailants' automobile, given on the 18th, so closely matched the appearance of the automobile parked near the bar which she pointed out on the night of the arrest, the officers plainly had probable cause to believe the automobile had been used in the crime and contained evidence they were entitled to seize. Therefore, we are considering a probable cause search, which proceeds on a different theory than a search incident to an arrest. Chambers v. Maroney, 399 U. S. 42, 49 (90 SC 1975, 26 LE2d 419) (1970). Preston v. United States, 376 U. S. 364 (84 SC 881, 11 LE2d 777) (1964), invalidating a warrantless search of an impounded automobile because not sufficiently contemporaneous with an arrest for vagrancy, is thus inapplicable. These officers, as appellants stressed in their briefs, did not know who owned this automobile and were by no means sure that they had in custody the only persons who might try to drive it away. They had no knowledge, prior to the victim's spontaneous identification of the automobile parked on the street, which would have justified a prior effort to come to the bar pre-armed with a search warrant for the automobile. In these circumstances a warrantless seizure of the automobile was eminently reasonable. Carlton v. Estelle, 480 F2d 759 (5th Cir. 1973).

Where probable cause exists, and it did here, there is no difference under the Fourth Amendment between seizing the car before applying for a warrant, and carrying out an immediate, warrantless search; both are permissible. Chambers v. Maroney, supra, 399 U. S. p. 52; Carlton v. Estelle, supra. Having the right to search the automobile on the spot, officers might also validly search it the next morning after it had been impounded. Texas v. White, 423 U. S. 67 (96 SC 304, 46 LE2d 209) (1975); Cardwell v. Lewis, 417 U. S. 583, 593 (94 SC 2464, 41 LE2d 325) (1974); *Hunter v. State,* 127 Ga. App. 664, 667 (194 SE2d 680) (1972). The warrantless search of this automobile at the impoundment lot was proper.

There is no merit to appellants' argument that the scrapings should be suppressed because the automobile was searched pursuant to officers' knowledge of its ownership derived from improper questioning of Newman. The alleged failure to comply with the provisions of Code Ann. § 99-4002 (c) concerning the interrogation of the deaf is claimed to invoke the exclusionary rule. Without deciding whether exclusion of such evidence from a determination of probable cause would be an appropriate sanction for violation of this code section, we rule that probable cause existed without the officers' later-acquired knowledge of ownership of the automobile.

3. The issue concerning the witness list is governed by Code Ann. § 27-1403, which provides that "Every person charged with an offense against the laws shall be furnished, on demand, previously to his arraignment, with a copy of the accusation, and a list of witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the State was not aware of at the time of its furnishing the defendant with a list of the witnesses."

With respect to the five witnesses as to whom oral notice was given, defense counsel admitted in his place

that eight days before trial he was advised that the state contemplated using these witnesses. He also admitted being given addresses for certain of them. There is no contention that defense counsel was unfairly surprised by their appearance. What does appear is that in an apparent exercise of gamesmanship, defense counsel announced ready for trial, waited until the jury were selected and sworn, the opening statements were completed, and jeopardy attached, and only then mentioned for the first time his contention that the oral list did not fulfill the requirement of the statute for a written list, and argued that the state should be prohibited from using the witnesses orally supplied to him.

The state argues that under *Hunnicutt v. State,* 135 Ga. App. 774, 775 (219 SE2d 22) (1975) the available remedies in such circumstances are continuance or mistrial, and that by failure to invoke a proper remedy, the defense waived any defect in the list of witnesses. This argument is not viable after *Favors v. State,* 234 Ga. 80, 84 (214 SE2d 645) (1975); but in any event we prefer to ground our decision differently.

As we have observed before, "It is evident that the transcending purpose of . . . [Code Ann. § 27-1403] is to insure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial." *Hicks v. State,* 232 Ga. 393, 399 (207 SE2d 30) (1974). This statute has traditionally not been interpreted narrowly, but has been construed to accomplish its purpose of giving actual, accurate, timely notice. For example, the state may supplement its list multiple times, even where it does not claim that the new names are newly discovered, so long as the information given is complete a reasonable time before trial. Id. Moreover, the doctrine of harmless error is applicable to flaws in the prosecution's compliance with the statute. *Clark v. State,* 138 Ga. App. 266 (226 SE2d 89).

We have never squarely decided the question whether oral notification without more is adequate. In *Beeks v. State,* 225 Ga. 200, 201 (167 SE2d 156) (1969) there was oral notification but there were other distinguishing circumstances as well. The Court of

Appeals, in *Brown v. State,* 129 Ga. App. 713, 715 (200 SE2d 924) (1973) approved a telephone call as adequate compliance, but as we read that decision it was not a "substantial compliance" decision but a "newly discovered" witness decision—the prosecutor did not learn of the witness until the day before trial.

Plainly, it would emasculate the statutory requirement for a written list if we ruled that oral notification will always suffice. Without deciding whether oral notification will suffice in other circumstances, we rule that any defect in the prosecution's failure to provide a written list in this case was plainly harmless, where defense counsel acknowledged actual notice of the five witnesses eight days before trial, and never alleged prejudice of any kind whatever from the fact that the notification was oral and not written. *Wells v. State,* 134 Ga. App. 328 (214 SE2d 414) (1975) does not counsel a different result. There, the Court of Appeals reversed where defense counsel did not receive either a copy of the proper indictment or a list of witnesses.

It follows that there was no harmful error in the trial court's admitting testimony by the witnesses Fuller, Mills, McKenzie, Epstein, and Thomason.

The testimony of Rendleman and Tillman was properly admitted when the prosecutor stated in his place that their evidence was newly discovered. *Wilson v. State,* 235 Ga. 470, 476 (219 SE2d 756) (1975); *Thomas v. State,* 234 Ga. 635 (217 SE2d 152) (1975).

The testimony of the bar owner, McBride, under the foregoing facts was improper; but the error was harmless because his testimony of the appellants' presence in the bar on the evening of the offense and of the victim's return and outcry, were merely cumulative of the testimony given by other witnesses.

In addition to the points discussed above which are enumerated as error by both appellants, Hinton avers three errors. They are similarly without merit.

4. Hinton was not indicted for the act of sodomy to which the victim testified, and he argues that testimony of this crime prejudiced the jury against him and was excludable under Code Ann. § 38-201 as irrelevant.

This testimony did not concern a separate and wholly independent crime from that for which Hinton stood trial, but was properly included as part of the res gestae. *Lindsey v. State,* 234 Ga. 874, 876 (218 SE2d 585) (1975); *Wood v. State,* 234 Ga. 758, 760 (218 SE2d 47) (1975).

5. Hinton argues that the trial court erred in denying a motion for continuance on his behalf by Mr. Friedberg. The record shows that both defendants went to trial represented by Mr. Bacote though Mr. Friedberg had investigated the facts and attended the trial; that during the trial out-of-court proceedings came to light suggesting that a conflict might develop between the defendants if a certain Mr. Coley were called to testify; that as a cautionary move, the court then appointed Mr. Friedberg to represent Hinton if the conflict developed; that Coley was never called and the conflict never developed; that nonetheless Friedberg began assisting with Hinton's defense and made the motion for continuance in that role; that the state offered to stipulate most of what Mr. Friedberg desired the delay to establish; that Friedberg never specifically waived his continuance motion and the trial court never specifically ruled on it; that after extensive colloquy on and off the record, all parties merely proceeded with the trial. Assuming that the motion for continuance was insisted on and was denied, on these facts no abuse of discretion has been shown. See *Nations v. State,* 234 Ga. 709, 710 (217 SE2d 287) (1975).

6. Finally, the contention that the judge's remark that a defense question put to the victim about her boyfriend's shirt was "not the way he [the boyfriend] testified," is frivolous.

No reversible error appearing, both convictions are affirmed.

*Judgments affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

ARGUED MAY 11, 1976 — DECIDED
SEPTEMBER 7, 1976.

*Neeson, Freeman & Mobley, James H. Mobley, Jr.,* for appellant (case no. 31056).

*Stephen M. Friedberg,* for appellant (case no. 31057).

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.