## 33808. STEVENS v. THE STATE.

HALL , Justice.

This is Stevens' appeal from his death sentence imposed January 24, 1978, in Wayne County Superior Court, for the murder of Roger E. Honeycutt, a taxi driver.

The state's evidence, including Stevens' confession, showed that on the night of September 4, 1977, Stevens was drinking beer in the enlisted men's club with Christopher A. Burger, a friend and fellow serviceman at Fort Stewart. The two ran out of money and decided to rob a cab driver. They called a Shuman Company cab, but decided not to use it upon finding that the driver was accompanied by a friend. They then received a call from James Botsford, their squad leader, who asked to be picked up. at the Savannah airport. Stevens and Burger took a knife sharpener and a 14-inch butcher knife from the dining facility, and called a D & M cab. When the driver, Honeycutt, arrived alone, Stevens and Burger entered the cab and later, at an agreed signal, they drew the two weapons forcing the driver to the curb. He was able to give them less than $20. Stevens then ordered him to remove all of his clothes, which Stevens then rifled, throwing them out of the cab window as Burger drove the three. Honeycutt, now naked, was pleading for his life, saying he would do anything. Stevens forced him to commit an act of oral sodomy, then an act of anal sodomy, and then bound him with the microphone cord from the cab's CB radio and placed him in the trunk of the cab. Stevens and Burger then drove to the airport to pick up Botsford, to whom they admitted that the cab was stolen and the driver had been robbed, sodomized and placed in the trunk. Stevens showed Botsford the weapons. From time to time Stevens and Burger would shout to the victim "Are you still back there?" and Botsford heard the reply from the trunk, "Yes, sir."

Botsford's testimony at trial was that Stevens said he thought they should kill Honeycutt, but Burger disagreed, and Botsford tried to talk him out of it and thought he had succeeded. When they arrived back at Fort Stewart to deposit Botsford, Stevens and Burger seemed to him to have agreed to let the driver go and leave

the cab beside the road.

After dropping Botsford off, Stevens and Burger drove to Jack's Mini Mart in Jesup for milk and sandwiches. Later, when a police car appeared to be following them, they decided they had to get out of the car, so Burger drove to a pond in a wooded area. They wiped their fingerprints off the car, and Stevens removed the CB radio. This radio was later recovered by police from the automobile of Burger's mother-in-law. Burger drove the automobile into the pond, leaping free before it went in. The two looked back and saw the automobile sinking. The victim, bound in the trunk, drowned. Burger and Stevens returned to Fort Stewart, paying another taxi an $11 fare for the return trip.

The next day the two inquired of Botsford whether he had said anything to authorities, and he said not. They told him they had freed the driver. A few days later, amid reports of the missing driver, Botsford went to authorities and gave a statement of what he knew.

Burger confessed. Stevens, who was aware of Burger's confession, confessed. In his handwritten confession he stated that he had advised against killing the driver and had not known Burger was planning to drive the automobile into the pond.

The car was pulled from the pond, and the victim was found in the trunk. Numerous pieces of Honeycutt's clothes were recovered from the route Stevens and Burger had driven. The two weapons were found in the cab. Honeycutt's identification was found above the sun visor of the cab, and the cab was identified by its owner as the one driven by Honeycutt.

Stevens and Burger were tried separately for murder, and each was convicted and sentenced to death. See *Burger v. State,* 242 Ga. 28. Stevens' confession was introduced against him, as was Botsford's testimony. Stevens urges numerous errors in this appeal.

1. In a two-pronged argument, Stevens urges that the trial court erred in not requiring the state to produce the written statement of James Botsford in response to a defense motion. The statement was sought under the Brady rationale, and also under a notice to produce pursuant to Code Ann. § 38-801 (g). The state did furnish

Stevens with a summary of Botsford's statements, and the trial court made an in camera inspection of the prosecutor's files, finding nothing exculpatory in the requested statement by Botsford. Botsford's statement was not used at trial.

Brady v. Maryland, 373 U.S. 83, 87 (1963), and Moore v. Illinois, 408 U.S. 786 (1972), ruled that due process was violated where the prosecution suppressed requested evidence which was favorable to the accused and material either to guilt or punishment. Our cases require that to prevail on such a point, an appellant must indicate the materiality and the favorable nature of the evidence sought. *Pryor v. State,* 238 Ga. 698, 706 (234 SE2d 918) (1977); *McGuire v. State,* 238 Ga. 247, 248 (232 SE2d 243) (1977); *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975); *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) (1974). In *Rini v. State,* 235 Ga. 60 (218 SE2d 811) (1975), urged by Stevens, appellant carried this burden by showing that the two witnesses were key witnesses on whom the state's entire case depended, and by making a preliminary showing that discovery of their statements would show a sequence of events different from their testimony, thus undercutting their credibility.

Stevens has completely failed to carry this burden, because he has asserted no prejudice whatever from the fact that he did not have Botsford's statement prior to trial. He does not even now contend that there was anything material and exculpatory to himself in that statement. He subjected Botsford to full cross examination on the stand. Under the Brady rationale, Stevens has failed to show error.

Nor was he entitled to the statement under Code Ann. § 38-801(g), which allows a party to compel production of books, writings or other documents in the possession of another party. Stevens argues correctly that *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976), held this section applicable to criminal trials. However, *Brown* does not establish the general availability under Code § 38-801(g) of witnesses' statements, and there has been no such decision by either of Georgia's appellate courts. Indeed, such a decision would be at odds with the general proposition that " '[t]here is no Georgia statute nor rule of

practice which requires the district attorney to open his files to the attorney for the accused, nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the client.' " *Nations v. State,* 234 Ga. 709 (217 SE2d 287) (1975).

The Georgia Court of Appeals has ruled that the statements of witnesses in the prosecutor's files (nothing more appearing) may not be reached by Code Ann. § 38-801(g). *Barker v. State,* 144 Ga. App. 339 (241 SE2d 11) (1977).

Stevens has shown no error in the state's failure to produce the statement of Botsford.

2. Enumeration 2, complaining of lack of time to investigate three rebuttal witnesses who might have been called by the state, is moot because those witnesses did not testify. In any event, the state had previously promised Stevens that he would be given time to interview them if the state did eventually decide to use them. See also *Burger v. State,* supra.

3. Stevens complains in Enumeration 3 that the trial court erred in denying his mistrial motion based on the fact that the Stevens jury were in the jury room when the Burger jury, in the courtroom, fixed Burger's punishment at death; and Stevens' jury might have heard the resulting pronouncement of sentence because of the closeness of the jury room to the jury box. The trial judge stated on the record that in publishing the Burger verdict and pronouncing sentence he had lowered his voice "by at least one-half or more." In an effort to establish whether the Stevens jury heard the verdict of the Burger jury, the trial court summoned them all back to the jury box and specifically asked "Could any of you hear what went on in here." The transcript continues as follows: "Jurors: No, sir, not a word. [Note: All jurors, including alternates, gave a negative response.]"

On appeal, counsel for Stevens attempts to take issue with the reporting of the case, and says that not all jurors denied hearing anything; but this attempt cannot be allowed. Stevens is bound by the trial transcript, unless he moves to challenge its accuracy by the procedure in Code § 6-805 (f), and he has not done so.

For the same reason he must fail in his argument that the trial court erred in not polling the jury on this question. Nothing in the transcript shows that any request was made by the defense for polling the jury, and Stevens' counsel may not now claim the transcript is erroneous in this respect.

Having ascertained that the Stevens jury did not hear the Burger jury's verdict, the trial court did not err in denying a mistrial.

4. Stevens' acts of sodomy on the murder victim were a part of the same transaction as the murder, and therefore were part of the res gestae of this crime, despite the fact that the murder for which he was tried occurred some four or five hours later. As such, the sodomous acts were properly introduced into evidence. *Newman v. State,* 237 Ga. 376, 382-383 (228 SE2d 790) (1976); *Mills v. State,* 236 Ga. 365, 367 (223 SE2d 725) (1976); *Hill v. State,* 201 Ga. 300, 303-304 (39 SE2d 675) (1946). The cases cited by Stevens do not support his argument that this evidence should have been suppressed. The acts of sodomy were not "wholly independent, separate and distinct" (*Bacon v. State,* 209 Ga. 261, 263 (71 SE2d 615) (1952)) from the murder on trial.

5. Stevens argues in Enumerations 5 and 8 that the trial court erred in denying his motion in limine and in admitting into evidence State's Exhibit 8, which was a photograph of the body as it was found in the trunk several days after the crime in a partially decomposed condition.

The photograph in question depicted the relevant and material fact that there was a drowned body in the trunk of the recovered taxi. In fact, this circumstance tended also to assist in establishing the identity of the victim. Georgia law is abundantly clear that a photograph which is relevant and material to the issues in the case is not excludable on the ground that it would inflame the minds of the jurors to see it. E.g., *Moore v. State,* 240 Ga. 807, 816 (243 SE2d 1) (1978); *Johnson v. State,* 239 Ga. 324, 325 (236 SE2d 661) (1977); *Beasley v. State,* 239 Ga. 49 (235 SE2d 520) (1977); *Bryan v. State,* 206 Ga. 73, 74-75 (55 SE2d 574) (1949) cert. den. 339 U. S. 904 (1950). The fact that the photographs were made long after death and

depict a decomposed body does not change the result. *Weaver v. State,* 199 Ga. 267, 270-271 (34 SE2d 163) (1945).

Stevens cites the following language from *Holcomb v. State,* 130 Ga. App. 154, 155 (202 SE2d 529) (1973): "Where, as here, the cause of death is not in dispute, and the defendant admits to having fired the fatal bullet, a trial judge would often be well advised to sustain an objection to their [photographs'] admissibility on the ground that they add nothing of probative value to the record." This sentence is dictum, and offers no support to Stevens' argument, as the Court of Appeals in *Holcomb* itself recognized in the very next sentence: "Nevertheless, under the decided cases the head and chest shots here were properly admitted in evidence." Id.

6. In enumerations of error 6 and 7 Stevens asserts that his confession should not have been admitted into evidence, because it was made only after he knew of Burger's confession which he alleges was involuntary, making his also legally involuntary and subject to exclusion from evidence. He also complains of the admission of several items of physical evidence which were discovered as a result of those confessions, on the ground that they were the "fruit of the poisonous tree."

In *Burger v. State,* supra, we have ruled Burger's confession voluntary and admissible. That ruling disposes of these two enumerations.

7. Enumerations of error 10 and 11 object to the charge given on the sentencing phase of Stevens' trial. This was the same charge given Burger's jury, and in the *Burger* appeal we have ruled the charge erroneous, requiring a new trial as to sentence. Stevens must also have a new trial as to sentence, at which time issues concerning the additional alleged errors in the charge which he claims in Enumeration 9 might not be presented.

8. The evidence was adequate to support the conviction.

The state's circumstantial evidence adequately established that the victim was Roger E. Honeycutt, and Stevens' argument on appeal that the state failed to prove the identity of the man Stevens was tried for murdering is without merit. Additionally, the director of the state

crime laboratory and a print examiner from that laboratory both testified that the left thumb print from the body matched that of Roger Honeycutt as shown on Army identification records. The director additionally identified the body from Honeycutt's Army dental charts. Defense counsel questioned neither witness and made no objection to this evidence. Now, on appeal, the claim is made for the first time that the Army records were not properly authenticated. We have recently considered and rejected an almost identical claim, similarly made for the first time on appeal, in *Redd v. State,* 240 Ga. 753, 755-756 (243 SE2d 16) (1978). *Redd* is dispositive of this issue.

Accordingly, the trial court did not err for any reason assigned in denying the new trial motion.

*Judgment of conviction affirmed, and a new trial ordered as to sentencing. All the Justices concur, except Hill, J., who concurs in all divisions except Divisions 1 and 5, as to which he concurs in the judgment only.*

ARGUED JULY 10, 1978 — DECIDED
SEPTEMBER 5, 1978.

*Gibbs, Leaphart & Smith, Robert B. Smith,* for appellant.

*Glenn Thomas, Jr., District Attorney, John B. Johnson, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General,* for appellee.