## 60353. ODOM v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was indicted for murder in the killing of another

human being by shooting him with a certain gun on March 5, 1979, "unlawfully, feloniously, wilfully and with malice aforethought." She was tried and thereafter convicted of voluntary manslaughter. She was sentenced to serve a term of 12 years. Defendant's motion for new trial was heard and denied, and she appeals. *Held:*

1. During the trial at the conclusion of the direct examination of two key state witnesses defendant requested all statements or summaries of statements heretofore given to any law enforcement officer by the witnesses. Defendant contends that under *James v. State,* 143 Ga. App. 696, 698 (240 SE2d 149) (1977), she was entitled to have these statements given prior to trial for impeachment purposes. However, even though the federal practice under the authority of the Jencks Act, 18 USCA § 3500, entitles the defense to such statements given prior to trial by key prosecution witnesses, the Georgia law does not provide that such statements of witnesses be generally made available for discovery by the defendant in a criminal case. See *Stevens v. State,* 242 Ga. 34, 36 (1) (247 SE2d 838)(1978).

Counsel for the defendant contends that only by giving defense counsel free access to such statements by hostile witnesses can he fulfill his client's Sixth Amendment rights to effectively confront the defendant's accusers. The state, however, contends that the Jencks Act, supra, and the decision upon which it is based, that is Jencks v. United States, 353 U.S. 657, 668 (77 SC 1007, 1 LE2d 1103), do not set forth constitutional requirements but merely state rules of evidence governing federal criminal prosecution. Consequently, the defendant has not followed the proper remedy in waiting until trial to seek discovery as to these statements, and no proper demand had been made. Citing *Rini v. State,* 235 Ga. 60, 64 (1) (218 SE2d 811), the state admits that since the key witnesses' testimony bears directly upon the question of guilt and is so material to the prosecutor's case, the credibility of such witness becomes a central issue, and the defendant potentially would have a right to procure the pretrial statements of these key prosecution witnesses for impeachment purposes. The state contends, however, that under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), at least a preliminary showing of prejudice must be shown by denial of the requested material and that materiality or favorability must be met before a denial by the trial court of the requested items amounts to a violation of due process. See *Stevens v. State,* 242 Ga. 34, 36, supra; *Pryor v. State,* 238 Ga. 698, 706 (5) (234 SE2d 918); *McGuire v. State,* 238 Ga. 247, 248 (232 SE2d 243). In *Brown v. State,* 238 Ga. 98 (231 SE2d 65), the proper demand method for obtaining prior statements from key prosecution witnesses was explained to be by the use of a notice to produce pursuant to Code Ann. §§ 38-801 and 38-802 (Ga. L.

1966, pp. 502, 504, and as amended by Ga. L. 1968, pp. 434, 435; 1968, p. 1200). However, the Supreme Court of Georgia did not decide specifically what had to be produced pursuant to a notice to produce.

In *James v. State,* 143 Ga. App. 696, 698-699, supra, however, even though the motion to produce came too late nevertheless this court ordered upon the return of the remittitur that the trial court examine *in camera* "all written statements made prior to trial by the witnesses for the state and, if he finds material of an exculpatory or impeaching character" that a new trial be ordered and the copies of such statements be delivered to defense counsel. Furthermore, in *James v. State,* 143 Ga. App. 696, 698, supra, this court reasoned that "at time of the trial it had not been established in Georgia that a notice to produce could be utilized as a defense tool in a criminal case, and we feel that under the circumstances the defendant [James] was denied a potentially valuable right guaranteed him by due process standards."

From our examination of the evidence, it is clear from the testimony of the two witnesses here involved that any statements made by them or summaries of statements would be inculpatory and not exculpatory and in nowise impeaching in character. It would therefore be an exercise in futility to affirm with direction here. Accordingly, there is no merit in this complaint. See *Wood v. State,* 243 Ga. 273, 274 (5) (253 SE2d 751); *Raymond v. State,* 146 Ga. App. 452, 453 (246 SE2d 461).

2. At the time of the killing of the deceased, who was the paramour of the defendant, defendant made certain admissions in a statement in which she stated that the deceased was "a boy friend of mine," and that she was going with another boy friend and "he had wanted me to break up with my other boy friend." A lovers' quarrel ensued when they were sitting in an automobile in front of a private club. This in turn became an assault by the deceased upon the defendant, and when he started choking her she shot two or three times toward the deceased although she never admitted killing him. She added that it was a lovers' quarrel and "we were jealous of each other," and following the argument outside the club this caused "the fight."

Defendant had a date (social engagement) with another man on the night of the incident. He was not available at the trial to testify although he had been subpoenaed. During the cross examination of the special agent of the Georgia Bureau of Investigation (G.B.I.) who had investigated the incident he was asked if he had interviewed the absent witness who had been subpoenaed (defendant's social companion at the time of the incident). The G.B.I. agent was asked extensively as to whether he had obtained a statement and reduced it

to writing, the reply being that it was only in an unsigned summary form. He was then asked if he had the written summary in his possession, and even though he had his file in his hands he did not have the notes with him, although he had the summary. Thereafter like questions were asked as to interviews of other witnesses who had made statements which were reduced to summary form. On redirect examination the district attorney again asked questions of the G.B.I. agent with reference to his interview with the absent witness and his reduction of notes to a summary. The agent was also examined as to whether he had been subpoenaed by the defense; whether the defense counsel had subpoenaed his notes or whether he had been requested at any time to present his notes. He was then asked if he had the summary of the absent witness' statement and was asked to tell what this absent witness said. Whereupon defense counsel objected. The district attorney then remarked in open court: "That's what I wanted to determine," if defense counsel wanted it in. Whereupon defense counsel moved for a mistrial, contending out of the presence of the jury that the district attorney had "made a deliberate interrogation of the Agent, knowing full well that the Agent would not, and I could not have ever seen or obtained any statements made by this Agent under any circumstances of . . . [absent witness] . . ." He contended that the issue had been drawn in question in order to prejudice the defendant in the eyes of the jury. The district attorney then admitted it was not admissible, but since defense counsel had spent considerable time asking the G.B.I. agent witness about the various persons he had interviewed, as to whether he had made notes, brought these notes to court, reduced same to a summary and was attempting to show that the state was concealing some evidence, the district attorney had a right to have this matter explained to the jury. For this reason he had again asked questions in regard to the summary or summaries. The trial court then noted that the absent witness had been subpoenaed and a bench warrant was issued for him and denied the motion. Defense counsel then requested that "the Court then to tell the jury to disabuse their mind of the statement made by . . . [the district attorney] and to note to them that it was an improper remark and they should not consider it whatsoever." The court stated it would leave the record as it was at the time the motion for mistrial was made and thereafter denied. No corrective statement was made at that particular time to the jury in regard to this so-called improper evidence injected into the case.

Citing such cases as *Haynes v. State,* 80 Ga. App. 99, 101 (55 SE2d 646); *Flournoy v. State,* 82 Ga. App. 518, 519 (61 SE2d 556), and *Brown v. State,* 118 Ga. App. 617, 621 (165 SE2d 185), defense counsel contends that a mistrial should have been granted as the only

complete and satisfactory remedy where the prosecuting attorney knowingly injects into evidence an illegal element to the prejudice of the defendant. As to the cross examination with reference to the request to tell the jury what was in the summary, we find no illegal evidence was injected in the case as the question was never answered after objection. However, the district attorney then made the observation in the presence of the jury that this was what he wanted to determine, that is, if defense counsel "wanted it in." This could be said to be an attempt by the district attorney to inject his opinion into the case. But at the completion of the state's case and before presentation of the defendant's testimony, the trial court called the jury's attention to the fact that the district attorney had, earlier during the trial, asked the G.B.I. agent witness about a summary of a statement he had taken from one of the witnesses who had been called in this case and that the district attorney had made a remark at that time. The court then instructed the jury "to disregard any comment" made by the district attorney at that particular point in time. While it is doubtful that the so-called improper statement made by the district attorney during the colloquy was prejudicial to the defendant, the jury was thereafter instructed to disregard this statement. Error, if any, was rendered harmless thereby. See *Hodge v. State,* 149 Ga. App. 326, 327 (2) (254 SE2d 478). The trial court did not err in refusing to grant defendant's motion for mistrial.

*Judgment affirmed. Banke, J., concurs. Smith, J., concurs in the judgment only.*

SUBMITTED SEPTEMBER 3, 1980 — DECIDED OCTOBER 16, 1980.

*John Lee Parrott,* for appellant.
*Joseph H. Briley, District Attorney,* for appellee.