68833. COLLINS v. THE STATE.

DEEN, Presiding Judge.

Ronnie Collins appeals from his convictions of kidnapping and rape. At trial he asserted the defense of consent.

1. Appellant first contends the trial judge erred in refusing to allow him to inquire of individual jurors during voir dire as to their possible racial prejudice against him. After reviewing the transcript, we find appellant's counsel questioned the jury panel and asked whether or not any of the veniremen believed it was improper for a black man to have sex with a white woman. One of the jurors responded that he felt it was improper. Counsel then asked whether the jury would feel any different if both parties consented. The juror replied, "That would be up to them." Counsel persisted, "But you still feel that it's improper?" and the juror replied, "It's improper." Counsel then asked, "If the evidence in this case should show that this defendant in fact had sex with the alleged victim, would that fact

prejudice you against him?" The State objected contending the question called for prejudgment of the case and the court sustained the objection. Counsel continued questioning the juror by asking him if he "would be uncomfortable to sit on this jury" and "is your mind right now impartial between the defendant and the State?" To the first question the juror responded he would not feel uncomfortable and to the second he replied that his mind was impartial. Counsel did not ask any further questions as to racial prejudice and did not request the juror be excused for cause. Appellant now contends the court's ruling precluded him from asking questions as to racial prejudice of the remaining potential jurors. The transcript, however, shows that the trial judge did not tell counsel he could not ask questions pertaining to racial prejudice, but restricted his questioning to issues which did not call for a prejudgment of the case.

Appellant is correct in his assertion that Ham v. South Carolina, 409 U. S. 524 (93 SC 848, 35 LE2d 46) (1973), gives the defendant the right to examine jurors on voir dire as to possible racial prejudice against him. That case is distinguishable from the instant case in that the trial judge in Ham asked general questions as to bias, prejudice or partiality, but refused to ask more specific questions requested by defense counsel as to possible prejudice against the defendant because of his race. The holding in Ham required the court to question the jurors as to possible racial prejudice, but does not require the questions to be asked in any particular form or that any particular number of questions be asked. Here, counsel conducted his own questioning and was restricted only when the court felt he was getting into a question that might require prejudgment of the case. He did not ask any such questions of other potential jurors.

We find the trial court did not abuse its discretion in limiting the questioning. *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981).

2. Appellant assigns as error the trial court's denial of his motion to suppress evidence obtained from his automobile without a search warrant.

The evidence showed that the sixteen-year-old victim was en route home from a friend's house about 11:30 p.m. when the accelerator on her car stuck and the brakes failed. While attempting to stop the car, she was screaming for help and attracted the attention of the defendant and his accomplice. She finally stopped the car and the young men passed her. She went to a nearby house to telephone her father, but no one was at home. When she returned to the car, the defendant had turned his vehicle around and offered to help her. She explained her problem, gave him her keys and he pulled her car over to the side of the road and told her she did have brakes. When she informed him that she was afraid to drive the car and intended to walk home, the accomplice took her by the arm and the men forced

her into the defendant's car. They drove past a trailer which she stated was her home, but they refused to let her leave the car, locked the door and told her they were going to have some fun. She offered them money in an attempt to escape. The defendant drove his car down a dirt road, stopped the car, removed her clothing and raped her. His accomplice also raped her and then the defendant attacked her again. She cried continuously throughout the ordeal and begged for her release.

When these acts were completed, the defendant showed her pictures in a pornographic magazine. In *Megar v. State*, 144 Ga. App. 564 (241 SE2d 447) (1978), the porno photos were shown to the victims before the act as a guideline for the premeditated sexual performances expected of them. In the instant case, the porno pictures were shown to the victim immediately after the act of kidnapping and rape. Either way, the jury could probably infer the pornographic magazines were a type of blueprint empirically linking them to the execution of the violent assaults, both physical and mental, and the battering, bruising and abusing of the 16-year-old victim. In an attempt to obtain her release without further harm, she gave him her name and telephone number as he requested and he wrote the information on an envelope. The men returned her to her automobile and she went to the house where she had gone earlier. The residents were at home and she telephoned home. She learned that her father was out searching for her and he soon appeared at the house. She informed him of the rape and he reported it to the police. She was taken to the hospital, examined by a doctor and interviewed by the police. During the interview she told them about the magazine and the envelope. She then assisted the officers in their investigation, by showing them where the men had taken her and they observed the tire tracks at the scene. She also pointed out the house from which she believed they had come and the officers again noticed tread marks similar to those observed at the place where she claimed she had been raped. Through information obtained from the woman who lived in the house, the police were able to locate the defendant at his accomplice's home between 5:00-6:00 a.m. When the officers arrived, they noticed a car in the driveway which matched the description given by the victim and noticed that the tire treads were very similar to those seen earlier during their investigation. The defendant was arrested and his vehicle seized and driven to the police impound area by one of the officers. When the officer entered the vehicle he noticed a pornographic magazine lying between the front seats and the envelope on the dash in front of the steering wheel. Later that day, during daylight hours, the officer looked in the car window and noticed pubic hair on the seats. He retrieved it with forceps and sent it to the crime lab for analysis. At trial, the victim's father presented evidence to

prove that the brakes on his daughter's car were worn out.

This case is quite similar to State v. McCoy, 437 P2d 734 (Ore. 1968), where the victim was kidnapped and raped in the defendant's automobile. Because she was able to provide information identifying the vehicle to the investigating officers, they were able to identify the owner of the car, his place of business and his residence. The officers obtained an arrest warrant and he was arrested at his place of business. His automobile which was parked in the street was impounded. It was searched without a warrant after it arrived at the police garage and incriminating evidence was obtained. The arresting officer testified the vehicle was seized as an instrument of the crime and towed in as evidence. The court found the relevant test in determining whether the search was valid was not whether it was reasonable to obtain a search warrant, but whether the search was reasonable under United States v. Rabinowitz, 339 U. S. 56, 66 (70 SC 430, 94 LE 653) (1950) and Cooper v. California, 386 U. S. 58, 59 (87 SC 788, 17 LE2d 730) (1967), and held that whether a search is reasonable depends on the facts and circumstances of each case. In reliance upon Cooper, 386 U. S. at 59, the court held that "searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in the search of a home, a store, or other fixed piece of property. [Cit.]" State v. McCoy at 736. The court further found that the seized automobile was an instrumentality of the crime and "Cooper establishes that a search of an automobile, though remote in time and place from the arrest, may be constitutional where the officers have taken lawful custody of the automobile for a purpose intimately connected with the crime for which the arrest is made." Id. at 737.

The rule in Georgia is identical with that set forth in State v. McCoy. In *Newman v. State*, 237 Ga. 376 (228 SE2d 790) (1976), a case factually similar to the instant case, a young woman was kidnapped by two men from an automobile parked near a bar, forced into an automobile belonging to one of the defendants and repeatedly raped over a period of several hours before being released. She immediately reported the crime to the police. Several nights later she returned to the bar, recognized the rapists and called the police who arrived and arrested them. The victim informed the police that an automobile she saw parked near the bar appeared to be the one in which she had been abducted and raped. The police impounded the car and searched it the following morning without a warrant and obtained blood scrapings. The court held that the officers had probable cause to believe the vehicle had been used in the crime and that it contained evidence they were entitled to seize. " 'Therefore, we are considering a probable cause search, which proceeds on a different theory than a search incident to an arrest.' Chambers v. Maroney, 399

U. S. 42, 49 (90 SC 1975, 26 LE2d 419) (1970)." Id. at 379. As in State v. McCoy, supra, the court distinguished Preston v. United States, 376 U. S. 364 (84 SC 881, 11 LE2d 777) (1964), which invalidated a warrantless search of an automobile because it was not sufficiently contemporaneous with the arrest and pointed out that in *Newman* the officers did not know who owned the vehicle and were not sure they had in custody the only persons who might try to drive it away and had no knowledge prior to the victim's identification of the men in the bar and of the automobile which would have justified the obtention of a warrant.

As in McCoy and *Newman* the officers had probable cause to seize the automobile as an instrumentality of the crime (see OCGA § 17-5-1 (Code Ann. § 27-301)) and the search was contemporaneous with the seizure of the automobile. Moreover, as in *Newman* the officers had no way of determining who might have access to the vehicle and could remove and destroy the evidence. Moreover, the evidence contained in the automobile was in plain view. We find no error.

3. The trial court did not err in overruling appellant's motion for a mistrial after the District Attorney elicited testimony from the victim that she was a virgin at the time appellant raped her. OCGA § 24-2-3 (Code Ann. § 38-202.1), the rape shield statute, was enacted to protect a rape victim by excluding evidence which might reflect on her character without contributing to the issue of the accused's guilt or innocence. *Parks v. State*, 147 Ga. App. 617 (249 SE2d 672) (1978). The prosecutor claimed he was introducing this testimony as evidence of the victim's pain which related to the physical injuries she received during the commission of the crime. The evidence was therefore relevant and could be admitted despite appellant's argument it tended to damage or impair his case. *Jenkins v. State*, 156 Ga. App. 387, 388 (274 SE2d 618) (1980). The transcript shows, however, that the court sustained appellant's objection and instructed the jury to disregard the answer. We find the appellant did not suffer the complained of harm.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1984.

*Jimmy W. Watson*, for appellant.
*David E. Perry*, District Attorney, *Robert C. Wilmot*, Assistant District Attorney, for appellee.