## A98A0063. HERNDON v. THE STATE.
(499 SE2d 918)

POPE, Presiding Judge.

Billy Joe Herndon was charged with rape, kidnapping, aggravated sodomy, aggravated assault, armed robbery, theft by taking, possession of a knife during the commission of a crime, driving under the influence, driving with a suspended or revoked license, and two counts of recidivism. In a May 1996 trial, a jury found Herndon guilty of theft by taking and driving under the influence, and the court withdrew the charges of driving with a suspended license. Because the jury was unable to reach a unanimous verdict, the judge declared a mistrial on the other counts and sentencing was delayed

until all charges were fully adjudicated. In October 1996, Herndon was again tried and the jury convicted him of rape, kidnapping, aggravated sodomy, aggravated assault, and armed robbery. He was sentenced to three consecutive life sentences; two concurrent twenty-year sentences; and a twelve-month concurrent term.[1] Here, Herndon appeals, arguing that the trial court erred in allowing evidence of the photographic array; that the court committed harmful error by allowing evidence that the victim was a virgin at the time of the attack; and that his trial counsel was ineffective in failing to object to the court's adoption of a prior ruling regarding Herndon's statement. For the following reasons, we reject Herndon's arguments and affirm.

Construed most favorably to the verdict, the evidence showed that at about 8:30 p.m. on December 31, 1995, Herndon abducted the victim while she was waiting in her car in a convenience store parking lot for a friend. Herndon got into the victim's car, threatened the victim with a knife, and told her to back up the car. Herndon forced the victim to drive to a remote area where he had her stop the car. He then held a knife to her throat; forced her to remove her clothes; forced her to perform oral sex; and raped and sodomized her. Herndon then forced the victim out of the car and threatened to cut her up. Herndon drove off and left the victim lying on the ground. The victim eventually found help and was taken to the hospital. The victim described her attacker to the doctor and later to police.

The victim's father was called and en route to the hospital he saw Herndon driving the victim's car. The victim's father intentionally bumped the car, causing it to spin out of control. The victim's father then ran to the car and held a knife to Herndon's throat until police arrived. The victim's father identified Herndon at trial.

When the police arrived, they noticed that Herndon appeared to be under the influence of alcohol and they arrested him. Later, after being read his rights, Herndon gave a statement, which was read at trial, in which he denied the attack. In the statement Herndon said that he had gotten the victim's car from a friend about ten minutes before the wreck with the victim's father.

The victim identified Herndon as her attacker in a photographic lineup and later identified Herndon's tape recorded voice as that of her attacker. Again at trial, she identified Herndon as her attacker.

1. Herndon argues that the court erred in allowing into evidence the photographic lineup and testimony regarding it, because the lineup was impermissibly suggestive. Herndon also argues that there was a substantial likelihood of misidentification. We disagree with

---

[1] Though he was found guilty of theft by taking, that charge merged with the armed robbery for sentencing purposes.

both contentions.

"[T]he test is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The considerations in evaluating the likelihood of misidentification include: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the identification, and (e) the length of time between the crime and the identification." (Citations and punctuation omitted.) *Smith v. State*, 209 Ga. App. 540, 543 (4) (433 SE2d 694) (1993); *Daniels v. State*, 207 Ga. App. 689, 691 (4) (428 SE2d 820) (1993).

We first conclude that the identification procedure was not impermissibly suggestive. A review of the five photographs which were used in the lineup shows that the four individuals whose photographs were displayed with Herndon's shared many of his general physical characteristics. And there is no indication that the procedures used in showing the victim the photographic display were improper. Moreover, even assuming arguendo that the photographic identification procedure was impermissibly suggestive, there was not a substantial likelihood of irreparable misidentification. The victim had an extended period during which she observed Herndon at close proximity and she remembered seeing him previously at the convenience store; she paid attention to his face and recognized him when she saw him; her description of him was unwavering and accurate; she showed no hesitation in picking him out from the lineup; and, as Herndon concedes, very little time elapsed between the incident and subsequent identification. The court did not err in allowing the evidence.

2. Herndon argues that the trial court erred in allowing argument and testimony that the victim was a virgin before this assault. In his opening statement, the prosecutor stated that the victim had been a virgin at the time of the attack. Defense counsel objected and moved for a mistrial, but the trial court denied the motion. Later, during the State's case, a doctor who examined the victim testified that he had determined that she had been a virgin before the attack. Again defense counsel objected and the court ruled that the victim's prior sexual history was not relevant, except as it related to the doctor's examination. Accordingly, the court sustained the objection to the testimony generally, but overruled the objection as to evidence of the victim's prior sexual history which was relevant to the examination.

Here, Herndon argues that the court's overruling of his objection to these statements was erroneous. He argues that the victim's sexual history, or lack thereof, was not relevant to the charges and

should have been excluded. Citing *Jenkins v. State*, 156 Ga. App. 387 (5) (274 SE2d 618) (1980), and *Collins v. State*, 171 Ga. App. 906, 910 (3) (321 SE2d 757) (1984), the State argues that evidence of the victim's virginity was relevant to prove the extent of the injuries caused by the rape.

We agree with Herndon that evidence that the victim was a virgin — meaning that she had not had prior sexual relations — was inadmissible. See *Veal v. State*, 191 Ga. App. 445, 447 (4) (382 SE2d 131) (1989); see generally *Johnson v. State*, 146 Ga. App. 277 (246 SE2d 363) (1978); compare *Villafranco v. State*, 252 Ga. 188 (313 SE2d 469) (1984). To the extent that the court's ruling during the prosecutor's opening statement allowed statements about the victim's virginity, it was erroneous. Similarly, statements regarding the victim's virginity which the doctor testified were relevant to his examination of the victim were erroneously admitted. In reaching this conclusion, we recognize that language in *Jenkins* and *Collins* initially seems to support the State's conclusion that this evidence was admissible. Nonetheless, in *Collins* the jury was instructed to disregard the evidence regarding the victim's virginity. In *Jenkins*, this Court concluded that the doctor's testimony to which the appellant objected was not concerned with previous sexual behavior of the victim (though he did state that she was a virgin), but with physical injuries she received during the commission of the rape. Nevertheless, to the extent that *Jenkins* ruled that the victim's prior sexual history was admissible, it was erroneous and is hereby overruled. See generally *Green v. State*, 221 Ga. App. 436 (472 SE2d 1) (1996); *Fetterolf v. State*, 223 Ga. App. 744, 747 (7) (478 SE2d 889) (1996).

We agree with the trial court that any evidence of physical injuries a victim receives during the commission of a rape, including the condition of the hymen, is admissible. But to call a victim a "virgin" is to comment on her prior sexual history needlessly. Accordingly, the fact that a victim was a virgin prior to the attack is not admissible. Our holding is consistent with the intent of the Rape Shield Law, OCGA § 24-2-3: if there is no evidence of chastity, it need not be disproved. See *Johnson v. State*, 146 Ga. App. 277, 281.

Despite our conclusion that this evidence was erroneously admitted, "it is axiomatic that harm as well as error must be shown to authorize a reversal" and we find no harm in this case. *Veal v. State*, 191 Ga. App. at 447. The evidence against Herndon was overwhelming and it is highly probable that the error did not contribute to the verdict.

Herndon also argues that testimony regarding the condition of the victim's hymen was erroneously admitted. Herndon failed to object on this basis at trial and has waived this argument.

3. Finally, Herndon claims that trial counsel was ineffective in

failing to object to the adoption of the ruling in the previous trial concerning the *Jackson-Denno* hearing. We conclude that Herndon waived this argument by failing to raise it at the earliest practicable opportunity.

The judgment convicting Herndon of kidnapping, rape, aggravated sodomy, aggravated assault, and armed robbery was entered on October 25, 1996. Trial counsel filed a motion for new trial on November 12, 1996, but did not raise the ineffective assistance argument. The court denied the motion for new trial on March 11, 1997. On April 11, 1997, defendant's trial counsel filed a notice of appeal with this Court. On April 14, 1997 the court entered an order finding Herndon indigent and waiving the costs of appeal. On May 13, 1997 this Court dismissed defendant's notice of appeal for being untimely. On July 11, 1997, defendant, proceeding pro se, filed a motion for an out-of-time appeal and moved for the appointment of new appellate counsel. On July 15, 1997, the court appointed appellate counsel and in an order filed on July 16, the superior court granted the motion for out-of-time appeal, specifically stating: "[t]he defendant is given 30 days from the date of this order to perfect the appeal." Appellate counsel filed a new notice of appeal on August 13, 1997.

In *Ponder v. State*, 260 Ga. 840 (400 SE2d 922) (1991), the Supreme Court held: "the grant of an out-of-time appeal constitutes permission to pursue appropriate post-conviction remedies, including a motion for new trial. It follows from that holding and from the requirement that a claim of ineffective assistance of counsel be determined by means of an evidentiary hearing at the earliest practicable moment, that a claim of ineffective assistance of counsel may not be asserted in an out-of-time appeal unless appellate counsel pursues a motion for new trial, subsequent to the grant of the out-of-time appeal, in which the issue is raised and resolved by means of an evidentiary hearing." Id. at 841-842. In the context of the grant of an out-of-time appeal, this Court has concluded that "appellant's earlier filing and the trial court's denial of a new trial motion did not preclude appellate defense counsel from filing another new trial motion timely raising the inadequacy of counsel issue before filing the notice of an out-of-time appeal. [Cit.]" *Wordu v. State*, 216 Ga. App. 552, 554 (2) (455 SE2d 101) (1995). See also *Maxwell v. State*, 262 Ga. 541, 542 (3) (422 SE2d 543) (1995). Accordingly, "[a] claim of ineffective assistance of trial counsel may not be asserted in an out-of-time appeal unless the defendant's new appellate counsel files a motion for new trial after the grant of the out-of-time appeal and raises the ineffectiveness claim." *Wordu*, 216 Ga. App. at 554.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Johnson, Blackburn, Smith, Ruffin, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur.*

134

DECIDED APRIL 9, 1998.

*Steven V. Bennett*, for appellant.
*Tambra P. Colston, District Attorney, C. Stephen Cox, Martha P. Jacobs, Assistant District Attorneys*, for appellee.