THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
REGINALD CARTER, Defendant-Appellant.

First District (5th Division)   No. 78-428

Opinion filed June 1, 1979.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:
Following a bench trial defendant was convicted of robbery (Ill. Rev.

Stat. 1975, ch. 38, par. 18—1) and sentenced to a term of one to three years in the Illinois Department of Corrections. On appeal, he contends that he was denied a fair trial where (1) the trial court considered a prior theft conviction in which defendant was not represented by counsel for impeachment purposes and in imposing sentence, (2) the trial court refused to admit into evidence a police report which allegedly impeached the testimony of the complaining witness, (3) the State knowingly used perjured testimony.

The following pertinent facts were adduced at trial.

*For the State*

*Armer Crawford*

At approximately 8:30 p.m. or 9 p.m. on July 11, 1976, he drove to the Birdcage Lounge where he had one drink. He left approximately 35 to 40 minutes later and drove directly to his residence at 9640 South Clyde, Chicago. He lived on the second floor of a large courtyard apartment building. He arrived at the building at about 10 p.m. or 10:30 p.m. and was about to open the outside door when he noticed a man approaching him. The man was wearing a blue coat, blue pants, and a gray hat. He identified this man as defendant. He had seen defendant in the neighborhood "many times" prior to July 11, 1976, but did not know him by name. Defendant struck him in the face, took his tote bag, ring and watch, and proceeded to run south on Clyde to 70th Street.

About one month prior to the attack, defendant visited the store where Crawford worked and asked him about the watch and ring he was wearing. When he told defendant they were "costume jewelry" defendant replied, "I know better than that." In May 1977 defendant again visited his store and asked him not to appear in court on this matter. Defendant offered to "take care of my loss," and stated he did not know why he attacked Crawford.

On cross-examination he denied seeing defendant in the Birdcage Lounge on July 11, 1976. Defendant did not drive him home from the lounge that night. He had scars on his finger and wrist as a result of the ring and watch being removed during the incident. He first reported the robbery to the police that same night, "shortly after it happened," but could not recall when he was first interviewed by the police. He did not wait until the next day to call the police. He admitted that on two occasions he had told the police that defendant appeared to be accompanied by a second person but he did not actually see this second person.

*For the Defendant*

*Raymond Bykowski, Chicago Police Officer*

He did not recall whether he interviewed Armer Crawford on July 12, 1976, and did not recall preparing a police report shown to him by

defense counsel, although some of the handwriting on the report appeared to be his.

*James Green, Chicago Police Investigator*

On July 14, 1976, he was assigned to investigate a robbery reported by Armer Crawford. He interviewed Crawford on that date. Crawford stated that he was approached by one person who struck him and took objects from him. The assailant was joined by a second person, but Crawford "did not get a good look at him because he [Crawford] was struck in the face." Crawford did not recall if this second person "had done anything." Crawford did not tell him that only one person was involved in the robbery.

*Lonny Robinson*

He is a friend of defendant whom he has known for five or six years. He saw defendant at about 12:30 a.m. on July 12, 1976, at the Birdcage Lounge. Defendant was sitting at the bar next to Armer Crawford. He remained in the lounge for two or three hours. Defendant and Crawford left the lounge together at about 2 a.m. There were 25 or 30 other people in the lounge. Crawford appeared to be under the influence of intoxicating liquors. He watched out the front window of the lounge as defendant and Crawford walked to Crawford's car. Crawford sat in the driver's seat while defendant sat on the passenger side. Defendant then got out of the car, walked to the driver's side, and got back in the car. Crawford "slid over and laid his head down." Defendant then "drove off."

On cross-examination, he admitted that he first learned that defendant had been charged with the offense about four months after the occurrence.

*Reginald Carter, on his own behalf*

He saw Armer Crawford sitting at the bar in the Birdcage Lounge at approximately 12 midnight on the night of July 11, 1976. Crawford was carrying a "purse-like pouch bag." He saw next to Crawford at the bar and talked with him for about 30 minutes. He and Crawford left the lounge together at about 2 a.m. on July 12, 1976, and walked to Crawford's car. He thought Crawford was drunk so he offered to drive him home. He drove to 69th and Clyde, where both he and Crawford got out of the car. He started to walk home in a southerly direction. As Crawford was "going into his apartment" he saw "this dude [rob] him." The person who robbed Crawford was about 5 feet 10 inches tall, weighed about 160 pounds and was about 25 or 30 years old. The assailant hit Crawford in the face. He did not see anything taken from Crawford. He knew Crawford's assailant, but did not say anything to him. Defendant denied striking or robbing Crawford.

On cross-examination, he testified that he was approximately five feet from Crawford "when this dude walked up and cracked him." He heard the assailant talk to Crawford, but could not hear what was said. The

assailant's name was Ralph Thomas. He admitted that he later asked Crawford not to testify against him and that he would pay for Crawford's losses. He knew what Crawford's losses were because he had read the police report.

On redirect he testified that he asked Crawford to drop the charges because "I did not rob him."

OPINION

Defendant first contends that he was denied his right to a fair trial where the trial court considered his prior theft conviction for impeachment and sentencing purposes even though he was not represented by counsel in the prior proceeding.

We believe that the trial court's use of the prior conviction in the present case was contrary to the holding of the United States Supreme Court in *Burgett v. Texas* (1967), 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258. In *Burgett* the defendant was charged in a five-count indictment, the first of which alleged assault with intent to kill. The remaining four counts alleged that defendant had four previous convictions, a Texas burglary conviction and three Tennessee forgery convictions. If the allegations of the prior convictions were found to be true, defendant, pursuant to the Texas recidivist statutes, would be subject to a term of life imprisonment upon conviction of the offense charged in count one. During trial the prosecution offered into evidence a certified copy of one of the Tennessee convictions. The document stated that defendant had appeared in that proceeding "in proper person and without counsel." Defendant objected to admission of evidence of the conviction on the ground that he had not been represented by counsel. The prosecution subsequently offered into evidence a second version of the same prior conviction which stated defendant had appeared "in proper person" but did not include the words "without counsel." The discrepancy between the two versions was not explained. There was no indication that defendant had waived counsel in the prior proceeding. The trial court later instructed the jury to disregard any evidence of the prior conviction. Defendant was found guilty on the first count, but did not receive the enhanced penalty under the recidivist statutes since the requisite prior convictions were not proven.

In reversing defendant's conviction, the court stated:

> "In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. Presuming waiver of counsel from a silent record is impermissible. *Carnley v. Cochran*, 369 U.S. 506. To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance

punishment for another offense (see *Greer v. Beto*, 384 U.S. 269) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." 389 U.S. 109, 114-15, 19 L. Ed. 2d 321, 324-25, 88 S. Ct. 258, 261-62.

The United States Supreme Court has since held that a prior conviction obtained in the absence of an effective waiver of counsel may not be used to impeach defendant's credibility (*Loper v. Beto* (1972), 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014) nor for determining sentence (*United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589).

■■ Defendant here was convicted of theft in 1971 and received a sentence of 18 days in the House of Correction and one year probation. The trial court here admitted a certified transcript of this conviction, specifically stating that he would consider the conviction for impeachment and sentencing purposes. The transcript clearly states that defendant was not represented by counsel. Although the transcript states that defendant pleaded not guilty and waived a jury trial, it does not indicate that he waived his right to counsel. The State offered no independent evidence to establish waiver of counsel. In light of the United States Supreme Court decisions discussed above, we hold that the trial court erred in considering defendant's prior uncounselled conviction for impeachment and sentencing purposes.

■■ It is true that the use of a constitutionally invalid conviction may be termed harmless error in some cases. (See *United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589.) However, before we can find constitutional error to be harmless we must be convinced beyond a reasonable doubt that the error could not have contributed to the finding of guilt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) In the instant case the trial court obviously chose to believe the testimony of the victim, Armer Crawford, and to reject that of defendant. Defendant's credibility was of major significance since his version of the events contradicted that of Armer Crawford. We are not convinced beyond a reasonable doubt that impeachment of defendant by means of the prior conviction did not contribute to the finding of guilt. Accordingly, we believe defendant is entitled to a new trial free of the error found here.

The State argues, however, that the sole fact that defendant was not represented by an attorney in the prior case does not show that he was denied the right to counsel. Defendant, the State argues, may have actually made an effective waiver of the right to counsel and he bears the burden of establishing the absence of an effective waiver. However, the United States Supreme Court did not place such a burden upon defendant in *Burgett v.*

*Texas* (1967), 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258. We must indulge every reasonable presumption against waiver of such a fundamental constitutional right as the right to counsel. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) As the court stated in *Carnley v. Cochran* (1962), 369 U.S. 506, 516, 8 L. Ed. 2d 70, 77, 82 S. Ct. 884, 890:

> "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The State also argues that defendant cannot collaterally attack his earlier conviction in the present proceeding. Defendant has not, however, contended that the prior conviction must be set aside and we do not so hold.

Although the judgment entered below must be reversed and the cause remanded for a new trial, we shall examine defendant's remaining issues since they are likely to arise at a new trial.

■ Defendant contends that the trial court erred in refusing to admit into evidence a police report which allegedly impeached the testimony of Armer Crawford. Defendant argues that the report was admissible as Officer Bykowski's past recollection recorded of an interview with Armer Crawford. Although a police report may be admitted into evidence as the preparing officer's past recollection recorded, a proper foundation is first required. (*Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 327 N.E.2d 433.) A proper foundation is established when the witness testifies that; (1) he has no independent recollection; (2) the document does not refresh his memory; (3) that he recorded the facts at the time of the occurrence or soon afterward; and (4) that his report was true and accurate when made. *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491.

■ Here, Officer Bykowski, referring to the report, testified that "I don't recall writing this report" and that, " I don't remember preparing that document." His testimony did not establish a proper foundation for the admission of the report. Accordingly, the trial court correctly refused to allow the police report into evidence.

Moreover, we believe defendant's argument lacks merit for yet another reason. Defendant argues that the report impeaches the testimony of Armer Crawford. Crawford testified that the robbery occurred at approximately 10:30 p.m. on July 11, 1976, and that he called the police shortly thereafter. The police report lists the time and date of the robbery as 10:30 p.m. on July 11, 1976. The report indicates that the police officers interviewed Crawford at 5:45 p.m. on July 12, 1976. Defendant asks us to assume that Crawford did not call the police until July 12, 1976, since that was the date on which the police interviewed Crawford. Such an assumption is unwarranted. The report does not indicate when the police

received the call from Crawford. The fact that the police did not conduct the interview until the following afternoon does not discredit or impeach the testimony of Crawford.

Defendant also contends that he was denied his right to a fair trial when the State knowingly used perjured testimony to obtain his conviction. He argues that the police report discussed above clearly establishes that Crawford did not testify truthfully as to when he reported the robbery. He again asks us to assume that since the police did not interview Crawford until 5:45 p.m. on July 12, 1976, Crawford could not have reported the robbery shortly after 10:30 p.m. on July 11, 1976. As discussed earlier, there is no basis for such an assumption. Defendant has shown no inconsistency between Crawford's testimony and the information contained on the police report and has clearly failed to demonstrate the use of any perjured testimony.

We note that the thrust of defendant's second and third contentions is that a doubt has been raised "as to whether a robbery occurred at all." However, defendant himself testified that he saw a man identified as Ralph Thomas hit and rob Crawford outside of Crawford's home at approximately 2 a.m. on July 12, 1976, conceding that a robbery did occur.

Based on the foregoing discussion, the judgment of the circuit court is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.