THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL KEMBLOWSKI, Defendant-Appellant.

First District (4th Division)   No. 1—87—3094

Opinion filed August 2, 1990.

Randolph N. Stone, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James Fitzgerald, and Jeanne A. Morrow, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant Daniel W. Kemblowski was convicted of four counts of aggravated criminal sexual assault (Ill. Rev.

Stat. 1985, ch. 38, par. 12–14(a)) and sentenced to concurrent terms of 10 years' imprisonment for each offense. On appeal, he argues that his convictions should be reversed because the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. Defendant also asserts that he should receive a new trial because the State was erroneously permitted to introduce evidence that complainant is a lesbian, her marriage has never been consummated, and her husband is a homosexual, all of which should have been excluded pursuant to the Illinois rape shield statute. (Ill. Rev. Stat. 1985, ch. 38, par. 115–7(a).) Defendant also argues that two counts of aggravated criminal sexual assault should be vacated, since the record reveals only two acts of sexual conduct occurred.

We conclude that the Illinois rape shield statute prohibits the State's introduction of evidence regarding the complainant's lesbianism and the failure to sexually consummate her marriage, and because we determine that the admission of this evidence prejudiced defendant at trial, we reverse and remand.

Defendant was convicted for having committed aggravated criminal sexual assault upon S.W. on May 30, 1986. Both the complainant and defendant testified at trial, their versions of the events preceding the assault shared many similarities, and the defendant's defense at trial was that S.W. had consented to engaging in sexual relations with him. Thus, the instant cause presents what is commonly referred to as an accusation of "date rape." See *People v. Sandoval* (1990), 135 Ill. 2d 159, 552 N.E.2d 726.

The encounter between S.W. and defendant began at a tavern in East Dundee, Illinois. They had never met before and struck up a conversation. Defendant mentioned to S.W. that he had recently arrived in Illinois from Florida and that he was staying at a particular apartment complex in Keeneyville. After having several drinks together, defendant offered to take S.W. on a ride on his Harley Davidson. S.W. asked a few of the bar patrons, one of whom she had met on a prior occasion and all of whom she had seen in defendant's company earlier in the evening, if defendant was "cool." These individuals told her that he was, and S.W. therefore agreed to take a ride on defendant's motorcycle. S.W. testified at trial that she told defendant she wanted to return to her car, also parked outside the bar, after going on the motorcycle ride.

Defendant and S.W. went on the motorcycle ride, and then stopped at another tavern known to be frequented by motorcycle bikers. At this second bar, defendant and S.W. had several drinks together and both ingested some cocaine bought by defendant. While in

the bar, S.W. met another biker who took her on a short ride on his Harley Davidson. She testified at trial that she never told the police, after the incident, that she had ingested cocaine or ridden with the second biker while at the tavern.

Defendant and S.W. left this second bar after approximately an hour, and defendant drove to a nearby forest preserve. S.W. testified at trial that she thought defendant was returning to the tavern, where they met, so that she could return to her car. She also testified that defendant told her the reason for stopping at the forest preserve was because he was having problems with his motorcycle. S.W. stated at trial that she became frightened and repeatedly told defendant she wanted to leave, but that defendant told her not to become concerned. S.W. testified that defendant drove the motorcycle to a pavilion in the forest preserve, where he informed S.W. of his intention to engage in various sexual acts with her.

S.W. stated that she repeatedly told defendant "no, no *** let's get out of here *** you don't understand," when defendant initially informed her of his intentions. She testified, over defendant's objection, that by these remarks she meant that she was "gay." She stated that defendant then repeatedly hit her on the head and face, and threatened her with violence at knifepoint to commit the various sexual acts demanded of her by defendant. S.W. testified that after the alleged assaults, defendant apologized for his behavior, told S.W. to get dressed, suggested that she clean herself at a nearby water pump, and drove S.W. back to her parked car. He then immediately drove away.

S.W. testified at trial that she followed defendant in order to obtain his license plate number. She then drove home, telephoned a friend, and told the friend that she had been raped. Police were notified, and S.W. was taken to a nearby hospital. S.W. later identified defendant as her assailant in a photo array and in a police station lineup. The medical physician who examined S.W. after the incident testified *inter alia* that S.W. had bruises on her right temple, left cheek, left side of the forehead, and abrasions to the pelvis, one knee, and shoulder. He stated that these injuries were consistent with S.W. having been struck more than three times, and that in his experience, the injuries were not common to consensual sexual intercourse. He also stated that the injuries were consistent with a fall, although not a fall from a moving motorcycle.

S.W. testified at trial that she has never "sexually consummated" her marriage. At the conclusion of the State's case in chief, although the defendant stipulated that S.W.'s husband was a homosexual, he

objected to the admission of the stipulated fact into evidence. The court admitted the evidence of S.W.'s husband's homosexuality over the objection of defendant.

Defendant testified at trial that S.W.'s involvement in sexual relations with him was consensual. He explained that her physical injuries resulted when the motorcycle, which weighed approximately 800 pounds, fell over while both defendant and S.W. were seated thereon and the motorcycle was not moving. Defendant stated that once they had righted the motorcycle and had gotten back on the motorcycle, S.W. again caused the vehicle to fall in the opposite direction. Defendant testified that he blamed S.W. for the falls, and "slapped" her a few times on the face after he had pulled her from the motorcycle. Defendant indicated on photographs taken of the motorcycle the places where the vehicle had been damaged as a result of these falls. He also explained that S.W. had become angry at the forest preserve when she learned that defendant had not bought more cocaine for their use after engaging in sexual intercourse.

Based upon this evidence, the jury found defendant guilty of four counts of aggravated criminal sexual assault, and the court sentenced defendant to four concurrent terms of 10 years' imprisonment. Defendant's timely appeal followed.

■■ The defendant argues that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of the charges of aggravated criminal sexual assault. We have closely reviewed the evidence and find sufficient evidence to sustain the jury's findings of guilt. In contrast to *People v. Wright* (1986), 147 Ill. App. 3d 302, 497 N.E.2d 1261, and *People v. Jackson* (1989), 178 Ill. App. 3d 785, 533 N.E.2d 996, the testimony of the complaining witness in the case at bar did not verge on the incredible, nor did her testimony contain serious or glaring inconsistencies.

Defendant also asserts that the trial court committed reversible error when it permitted the State, over defendant's objection, to present evidence that S.W. is a lesbian, that she has never sexually consummated her marriage, and that her husband is a homosexual. At the time of defendant's trial, the Illinois rape shield statute, in pertinent part, provided:

"a. In prosecutions for aggravated criminal sexual assault, *** the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).

■■ In *People v. Sandoval* (1990), 135 Ill. 2d 159, 552 N.E.2d 726,

the Illinois Supreme Court stated that the language of the rape shield statute "is clear and unambiguous; it leaves no room for introduction of reputation or specific act evidence from any party in the action" and that "a review of the legislative history supports a construction which prohibits *anyone* from introducing evidence of the victim's sexual history unless it relates to the relationship between the victim and the accused." (Emphasis in original.) (135 Ill. 2d at 171.) In light of *Sandoval*, the evidence regarding S.W.'s sexual preferences and her failure to consummate her marriage with her homosexual husband should have been excluded in accordance with the Illinois rape shield statute.

██ ■ The State contends that this evidence was properly admitted because it pertained to S.W.'s "status" rather than to her past sexual activities with men other than defendant. The State refers us to no reported Illinois decision that draws the distinction between sexual "status" and sexual "activities" as suggested by the State herein. We also note that the Illinois Supreme Court in *Sandoval* made no exception to the rape shield statute by virtue of the complaining witness having a "sexual status" as urged by the State on appeal. We decline to adopt the State's position that a complaining witness' admission to being a lesbian should be characterized as a type of sexual "status," since this admission, by definition, pertains to the witness' sexual activities with another of the same gender. Consequently, we hold that the rape shield statute in aggravated sexual assault cases precludes admission of evidence that the victim was a lesbian, that a marriage was not sexually consummated, or that a spouse is homosexual.

■ We also conclude that the erroneous admission of this evidence was prejudicial to defendant and necessitates a new trial of defendant's guilt. The pivotal issue at trial was whether S.W. consented to sexual relations with defendant during the incident in question. Resolution of the credibility of S.W. and defendant with respect to this issue was the central responsibility of the jury upon its deliberation of defendant's guilt (see, *e.g., People v. Sales* (1986), 151 Ill. App. 3d 226, 502 N.E.2d 1221), and S.W's avowed preference for sexual activities with women necessarily affected the jury's assessment of whether S.W. agreed to sexual activities with defendant. The testimony of S.W. and defendant was substantially similar in many important respects, except with regard to whether S.W. consented to intimate relations with defendant. Also, the injuries suffered by S.W. did not overwhelmingly prove that S.W. did not consent to the sexual acts. Consequently, we cannot say that the erroneous admission of this evidence did not prejudice defendant's defense at trial.

In view of this disposition, we need not and do not address defendant's challenge to the sentences he received.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

JIGANTI and JOHNSON, JJ., concur.