THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL W. KEMBLOWSKI, Defendant-Appellant.

First District (4th Division)   No. 1—90—2911

Opinion filed March 26, 1992.

Rita A. Fry, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Clare M. Wesolik, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial, the defendant Daniel Kemblowski was convicted of aggravated criminal sexual assault and sentenced to a prison term of 20 years. He contends on appeal that he was not proved guilty beyond a reasonable doubt. He also contends that he was prejudiced by the introduction of evidence that should have been excluded pursuant to the Illinois rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a)), that he was improperly impeached with evidence of a subsequently reversed conviction and that he is entitled to a new sentencing hearing.

The 14-year-old complainant testified that she and a group of her friends left school at 2 p.m. on June 3, 1986, and went to a forest preserve located at 107th Street and LaGrange Road in Hickory Hills. They began drinking beer; the complainant drank less than one can. She then went home, changed her clothes and returned to the forest preserve at 5:45 p.m.

While the complainant was sitting at a picnic table talking to her friends, the defendant walked over to them and offered them whiskey. He was dressed in blue jeans, black leather boots, a Harley-Davidson T-shirt and a black leather vest. He had a beard and a mustache and tattoos on his arm and left ear lobe. Although she initially refused, the defendant persuaded the complainant to take a sip of whiskey. When the group ran out of beer, the defendant volunteered to go to a liquor store for more. He said he needed someone to ride with him on his motorcycle to carry the beer. The defendant asked one of the complainant's friends, who declined, then asked the complainant. She agreed and the two drove to a nearby liquor store where the defendant purchased beer and cigarettes.

On the way back, the defendant turned off into a different section of the forest preserve at 103rd Street and LaGrange Road. When the

complainant protested that she wanted to return to her friends, the defendant said he was thirsty and wanted to have a beer. The defendant drove into an open trail, parked the motorcycle and began to drink a can of beer. When the complainant said that she had to get back to her friends, the defendant responded, "All right" and poured the beer onto the ground. The complainant testified that at that point, the defendant grabbed her, threw her to the ground and asked if she was a virgin. She responded affirmatively. The defendant did not object to this testimony. According to the complainant, the defendant took out a knife, held it to her neck and forced her to perform acts of oral and vaginal intercourse. As the defendant took off the complainant's shirt, it ripped under both arms. After the sexual acts were completed, the defendant wiped his penis on the complainant's shirt and told her to get dressed. As she did so, she grabbed a rock, struck the defendant on the head and ran out of the woods onto the highway. There she flagged down a motorist and told him that she had been raped.

Dennis Zaruszak, the motorist, testified that he was driving northbound on LaGrange Road when he saw a young girl run out of the woods waving her arms. He stopped and she entered the car. She was breathing heavily, appeared to be very upset and looked like she had just gotten dressed. She asked him to get her out of there and told him that she had just been raped. He drove her to the Hickory Hills police station.

Officer Emmett O'Neill spoke with the complainant at the police station. He testified that she was crying and breathing very rapidly. Her eyes were red, her clothing was torn and dirty and her hair was messed. After the complainant's mother arrived, the complainant was taken to Christ Hospital.

Dr. Barbara McCreary testified that she examined the complainant and found multiple fresh scratches on her back and arms, multiple bruises on her chest and abdomen and skin discoloration on her neck and both cheeks due to trauma. Dr. McCreary also testified that the complainant's hymen was disrupted. The defendant did not object to this testimony.

On June 6, 1986, the police arrested the defendant and recovered a knife from his person.

The 30-year-old defendant testified that on the day of the incident he went to the forest preserve and met a group of people who were drinking. After some time, he and a woman named April went to another part of the forest preserve and engaged in sexual intercourse. When the defendant returned to the group, he saw the complainant

sitting at a picnic table with her friends. She smiled at him, so he took a bottle of whiskey and went to talk to her. They drank the whiskey and smoked a marijuana cigarette. The defendant offered to take the complainant for a ride on his motorcycle. She told him to wait while she went home and changed clothes.

When the complainant returned, she and the defendant rode on his motorcycle to a liquor store where the defendant bought beer and cigarettes. They drove to another area of the woods, where they engaged in sexual intercourse. According to the defendant, the complainant consented to have sex with him but became argumentative afterward. They continued to argue during the ride back until the defendant told the complainant to get off of the motorcycle and walk.

After the defendant testified, the State informed the jury that in 1983 the defendant was convicted of a felony in Illinois and received an 18-month period of conditional discharge; in 1984 he was convicted of a felony in Florida and received a prison term of one year and one day; and in 1987 he was convicted of another felony in Illinois and received a 10-year sentence. The jury was instructed that it could consider the prior convictions in determining the defendant's credibility.

In closing argument, the prosecutor referred to the complainant's testimony that the defendant "asked if she was a virgin and she told him, 'Yes, I am.' " The defendant did not object to this argument.

During the sentencing hearing, the trial court considered the defendant's 1987 conviction for aggravated criminal sexual assault in sentencing the defendant to a 20-year term. The 1987 conviction was subsequently reversed and remanded by this court in *People v. Kemblowski* (1990), 201 Ill. App. 3d 824, 559 N.E.2d 247.

■ The defendant first contends that he was not proved guilty beyond a reasonable doubt. Essentially, he contends that the complainant's testimony that the sexual activity occurred without her consent was incredible.

In *People v. Schott* (1991), 145 Ill. 2d 188, 203, 582 N.E.2d 690, the Illinois Supreme Court held that review of all criminal convictions, including sex offenses, is governed by the reasonable doubt test articulated in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267. According to *Collins*, criminal convictions will not be reversed for insufficient evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. The test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106

Ill. 2d at 261, 478 N.E.2d at 277.) It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. *People v. Byron* (1987), 116 Ill. 2d 81, 90, 506 N.E.2d 1247.

The issue in this cause was whether or not the complainant consented to the sexual activity with the defendant. The defendant argues that the evidence shows consent because the complainant had been drinking with the defendant and agreed to go for a ride on his motorcycle. The State, however, produced an outcry witness who testified that the complainant came running out of the woods, jumped into his car and told him that she had been raped. He testified that she was breathing heavily and appeared to be very upset. He took the complainant to the police station, where she spoke with a police officer who later testified that she was crying and breathing rapidly and that her clothes were torn and dirty. The complainant was taken to a hospital and examined by a doctor who testified that she had several fresh scratches on her back and arms, bruises on her chest and abdomen and skin discoloration on her neck and both cheeks due to trauma. The outcry testimony and the physical evidence clearly corroborate the complainant's testimony that force was used. In our view, ample evidence exists to support the defendant's conviction for criminal sexual assault.

■ The defendant next contends that his right to a fair trial was violated when the State introduced evidence which should have been excluded pursuant to the Illinois rape shield statute. (Ill. Rev. Stat. 1985, ch. 38, par. 115—7(a).) Specifically, the defendant objects to the complainant's testimony that she responded affirmatively when the defendant asked if she was a virgin, to Dr. McCreary's testimony that the complainant's hymen was disrupted and to the prosecutor's reference to the complainant's virginity during closing argument.

The record reveals that the defendant failed to object to the testimony and comment which he now claims constituted grounds for reversal. Generally, a failure to object at trial will result in a waiver of the issue for purposes of review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) An exception exists where the court invokes the plain error doctrine, which is designed to correct any serious injustices which have been done to the defendant. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) The plain error doctrine may be applied where the evidence is so close that there is a possibility that an error not objected to may have resulted in the conviction of an innocent person. (*People v. Carlson*, 79 Ill. 2d 564, 404

N.E.2d 233.) The doctrine also encompasses those errors of such magnitude that their commission denied the accused a fair and impartial trial. *People v. Carlson*, 79 Ill. 2d 564, 404 N.E.2d 233.

We do not believe that the evidence in the case at bar was so closely balanced that the references to the complainant's virginity could have caused an innocent man to be convicted. Nor do we believe that the evidence and comment in question served to deny the defendant a fair trial. We therefore decline to invoke the plain error rule, and we consider the issue waived. In his reply brief the defendant argues, as an alternative ground to the plain error doctrine, that defense counsel's failure to object to the evidence constituted ineffective assistance of counsel. Reply briefs are limited to responses to arguments already made, and the raising of new issues is impermissible. (134 Ill. 2d R. 341(g).) We therefore will not consider this additional issue.

■ The defendant next contends that he was denied a fair trial because the State was allowed to introduce, for impeachment purposes, a prior conviction which was subsequently reversed. The defendant cites *Loper v. Beto* (1972), 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014, and *People v. Carter* (1979), 72 Ill. App. 3d 871, 391 N.E.2d 427, both of which stand for the proposition that convictions obtained in the absence of an effective waiver of counsel cannot be used for impeachment purposes.

Generally, a prior conviction is admissible for impeachment purposes despite the pendency of its appeal. (*People v. Bey* (1969), 42 Ill. 2d 139, 146, 246 N.E.2d 287, 291.) In *Loper*, the Supreme Court determined that the absence of counsel affected the integrity of the fact-finding process and held that the retroactive effect of *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, rendered the conviction void. The Court stated that a void conviction could not be used to impeach a defendant's credibility. Illinois courts have declined to extend the holding in *Loper* to cases where the defendant was impeached with a conviction subsequently reversed for insufficient evidence (*People v. Gardner* (1982), 105 Ill. App. 3d 103, 117, 433 N.E.2d 1318) or where the conviction was subsequently reversed based on a finding that evidence had been illegally seized (*People v. Miller* (1975), 27 Ill. App. 3d 788, 792, 327 N.E.2d 253). Thus, Illinois has taken the position that where the prior conviction was not void at the time of its introduction into evidence it does not constitute reversible error for the State to utilize the conviction for purposes of impeachment even though it is later reversed on appeal. *People v. Miller*, 27 Ill. App. 3d 788, 327 N.E.2d 253.

In the case at bar, the defendant's prior conviction was reversed based on the introduction of evidence which should have been excluded pursuant to the rape shield statute. (*People v. Kemblowski* (1990), 201 Ill. App. 3d 824, 559 N.E.2d 247.) The admission of such evidence may under certain circumstances be deemed harmless error (see *People v. Uzelac* (1989), 179 Ill. App. 3d 395, 534 N.E.2d 1250), and does not render a conviction void. Moreover, as in *People v. Miller* (1975), 27 Ill. App. 3d 788, 792, 327 N.E.2d 253, the defendant in the case at bar was impeached with other prior convictions which were not subsequently reversed. Under the circumstances, we do not believe that the defendant is entitled to a new trial.

■ Finally, the defendant contends that he is entitled to a new sentencing hearing because the trial court considered his subsequently reversed conviction in determining the sentence. The State concedes this issue. We therefore vacate the defendant's sentence and remand the cause for a new sentencing hearing.

Accordingly, the defendant's conviction is affirmed, the sentence is vacated and the cause is remanded for a new sentencing hearing.

Affirmed in part; vacated and remanded in part.

LINN and McMORROW, JJ., concur.