804 A.2d 617 (2002)
354 N.J. Super. 97
The STATE of New Jersey, Plaintiff,
v.
Michael L. BURKE, Defendant.
Superior Court of New Jersey, Law Division.
April 4, 2002.
Boris Moczula, Special Deputy Attorney General in Charge, Acting Passaic County Prosecutor, for plaintiff (Michael J. DeMarco, Special Deputy Attorney General, Acting Senior Assistant Prosecutor, appearing).
Miles R. Feinstein, Clifton, for defendant.
DE LUCCIA, J.S.C.
Over the 1999 Labor Day weekend, defendant was a guest at a small unsupervised house party. There he met K.T., a young woman approximately two months shy of her seventeenth birthday. By the time the evening was over, defendant and K.T. had engaged in sexual intercourse. The State contends that K.T. lacked the capacity to consent to the act because of voluntary intoxication. Alternatively, the State asserts that even if K.T. was not incapacitated as a consequence of intoxication, she failed to provide her free and willing consent to the encounter.
In support of its contentions, the State argues that it should be permitted to offer K.T.'s testimony as to her virginity prior *618 to the sexual encounter with defendant as evidence that she was unlikely to have consented to sexual relations with defendant on the evening in question. The court, however, finds that the use of such evidence is an attempt by the State to utilize the victim's alleged character or character trait for the purpose of proving that she acted consistent therewith on the date in question. This evidence is prohibited by N.J.R.E. 404(a).
On the evening of September 4, 1999, K.T. and two of her classmates planned an underage drinking party, an event which strikes fear and apprehension in the hearts of parents of teenaged children. After engaging in an elaborate subterfuge to deceive her unsuspecting father, K.T., unchaperoned, was dropped off at the home of a classmate where they were joined by three adult males all over the age of twenty-one. The admitted purpose of this party was to become inebriated.
K.T. did not previously know defendant or the other males at the party, although at least one of them was apparently an acquaintance of the host's older sister. Consistent with their plans, the participants quickly began a drinking binge. According to the State's proffer, at some point during the evening, K.T. began to feel the adverse effects of her improvident conduct. Ultimately, she elected to retire to a basement bedroom. Defendant was apparently quite solicitous of K.T., offering his empathy and assistance. According to K.T., on defendant's third excursion into the bedroom, he engaged in non-consensual sexual intercourse. K.T. does not allege that defendant used physical force to accomplish the assault, other than that force necessary to complete penetration. A subsequent medical examination did not reveal any injuries to K.T.
There is a question as to when K.T. first reported the incident. However, two days later, after her mother had returned from an out-of-state trip, K.T. disclosed that she had been sexually assaulted. The police were called and an investigation commenced. Defendant was summoned to police headquarters where he gave an uncounselled voluntary statement. In his statement, defendant essentially corroborated the circumstances surrounding his attendance at the party and acknowledged that he engaged in sexual intercourse with K.T. Defendant, however, insisted that K.T. had freely and voluntarily consented to the act. He denied that she was incapacitated as a consequence of intoxication.
The State argues that evidence of the victim's virginity is relevant and probative as to the issue of consent. The State reasons that K.T.'s alleged lack of prior sexual experience is circumstantial evidence from which a jury may reasonably infer that she was less likely to have consented to sexual relations with defendant, a person she first met that evening. Although K.T. was examined at a hospital two days after the incident, the State advises that it is not in a position to offer any medical evidence in respect of her virginity prior to September 4, 1999.
This issue does not appear to have been the subject of any reported decisions in this state. However, among the several jurisdictions that have addressed this issue, there is a split in the authorities.
Several courts have addressed this issue solely within the context of its implication of rape shield statutes. In People v. Harris, 297 Ill.App.3d 1073, 232 Ill.Dec. 108, 697 N.E.2d 850 (1998), an Illinois appellate court ruled that the prosecution's introduction of evidence of a victim's virginity prior to a sexual assault did not constitute evidence of past sexual activity prohibited by the Illinois Rape Shield statute. Id. at 1088, 232 Ill.Dec. 108, 697 N.E.2d 850. In Harris, defendant was convicted of committing *619 a sexual assault upon a fourteen year old girl. The defense suggested that the victim had consented to the act. The trial court permitted the State to introduce testimony from the victim indicating that she had responded affirmatively to defendant's inquiry if she was a virgin. The prosecution also introduced evidence of an unrelated prior sexual assault committed by defendant in which he had asked that victim a similar question. The trial court permitted the evidence of the unrelated assault to show absence of innocent intent and modus operandi. Id. at 1086-1087, 232 Ill.Dec. 108, 697 N.E.2d 850.
The Illinois appellate court concluded that evidence of the victim's virginity was admissible "to show defendant's questioning of a victim as part of circumstances of his attack." Id. at 1088, 232 Ill.Dec. 108, 697 N.E.2d 850. The court also concluded that although the prosecutor had improperly argued to the jury the truth of the victim's testimony, as opposed to limiting the evidence as part of the res gestae of the crime, the error was harmless. Ibid.
Other jurisdictions appear to be in accord. See State v. Preston, 121 N.H. 147, 427 A.2d 32 (1981). (New Hampshire's Rape Shield Law only excludes evidence of prior sexual activity of the victim and not evidence of the victim's virginity. Such evidence is admissible even if lack of consent is not raised by the defense. Id. at 149-150, 427 A.2d 32); and see State v. Singleton, 102 N.M. 66, 691 P.2d 67 (Ct.App.1984). (New Mexico's Rape Shield Law does not preclude evidence of a victim's virginity since that "evidence of a victim's virginity is relevant in cases involving alleged forcible criminal sexual penetration where the consent of the victim is at issue." Id. at 70, 691 P.2d 67); and see People v. Johnson, 671 P.2d 1017 (Colo.App.1983); (holding that a prosecutor's questions eliciting testimony from a victim as to issue of virginity prior to the assault did not violate Colorado's Rape Shield statute because that statute does not specifically prohibit a victim from testifying as to a lack of prior sexual activity. Id. at 1020).
At least two other courts have concluded that evidence of a victim's virginity or sexual status is barred by their respective rape shield statutes. In People v. Kemblowski, 201 Ill.App.3d 824, 147 Ill.Dec. 247, 559 N.E.2d 247, (1990), another part of the Illinois Appellate Court held that the Illinois Rape Shield statute prohibited the prosecution from introducing evidence of victim's lesbianism and failure to successfully consummate a marriage. Id. at 825, 147 Ill.Dec. 247, 559 N.E.2d 247. The court concluded that resolution of the victim's and defendant's credibility respecting the issue of consent was the pivotal issue before the jury and the victim's avowed preference for sexual activities with women prejudicially affected the jury's assessment of the issue of consent. Id. at 829, 147 Ill.Dec. 247, 559 N.E.2d 247. See also Herndon v. State, 232 Ga.App. 129, 499 S.E.2d 918 (1998), (concluding that comments about the victim's alleged virginity were needless references to her prior sexual history and were precluded by the Georgia Rape Shield Law. Id. at 132, 499 S.E.2d 918).
The State argues that our Rape Shield Law (N.J.S.A. 2C:14-7) does not prohibit the affirmative use of K.T.'s virginity in its case-in-chief. This court's research has revealed only one reported decision in this state in which the introduction of evidence of a victim's status as a virgin and its implication on our Rape Shield Law (N.J.S.A. 2C:14-7) has been addressed. In State v. Ogburne, 235 N.J.Super. 113, 561 A.2d 667 (App.Div.1989), the Appellate Division concluded that the defendant was *620 properly precluded from asking the victim whether she was a virgin.
The court concluded that:
"because defendant was permitted to question the victim regarding her sexual conduct during the only relevant time period (within a few days of the sexual assault), any more generalized inquiry regarding her prior sexual history would have created a danger of confusion of the issues and would have presented an unwarranted invasion of the victim's privacy. Indeed, evidence that a victim of a sexual assault is not a virgin is the precise kind of evidence which the Rape Shield Law was intended to ordinarily exclude." (citations omitted) Id. at 121, 561 A.2d 667.
Research has failed to disclose any reported decisions in this state in which the prosecution attempted to use evidence of a victim's virginity affirmatively to establish lack of consent. The absence of such precedent is not surprising. The focus of the statute is to protect sex crime victims from unwarranted and excessive cross examination by an accused, thus encouraging them to report the abuse. State v. Budis, 125 N.J. 519, 529, 593 A.2d 784 (1991). Once the statute is implicated, it triggers a pretrial notice and hearing requirement that applies to a defendant. N.J.S.A. 2C:14-7(a); and see State v. Cuni, 159 N.J. 584, 597, 733 A.2d 414 (1999). The statute does not impose a concomitant obligation on the State. A fair reading of the statute and the cases construing it, leads to a conclusion that it does not contemplate the circumstances presented here. However, even accepting the State's contention that its proffer does not offend our Rape Shield Statute (N.J.S.A. 2C:14-7), this court concludes that this issue must be resolved within the context of our Rules of Evidence. See State v. Ryan, 157 N.J.Super. 121, 126, 384 A.2d 570 (App.Div.1978), (holding that our former rape shield statute [N.J.S.A. 2A:84A-32.1] did not alter the law in respect of Evid. R. 47 [predecessor to N.J.R.E. 404(a) ], which rule prohibited evidence of a sexual assault victim's specific instances of sexual conduct with a person other than the accused to prove consent).
At least one appellate court has addressed this issue in the context of character evidence offered to prove conduct in conformity therewith on a particular occasion. In People v. Bone, 230 Mich.App. 699, 584 N.W.2d 760 (1999), the Michigan Court of Appeals held that the prosecution's introduction of the victim's testimony identifying herself as a virgin prior to the assault, violated Michigan's evidence rule on character evidence, M.R.E. 404(a)(3).
The facts in Bone bear a striking similarity to those in this case. In Bone, the sixteen year old victim and her younger sister were at home under the supervision of their nineteen year old brother while their parents were out of town. The victim's brother invited some friends to visit on the evening in question, including the defendant whom the victim had not previously met. Throughout the course of the evening, her brother and his friends were primarily in the basement of the residence and the victim and her sister were watching television in an upstairs bedroom. Defendant offered the victim a beer on several occasions and, at one point, put his arm around victim's waist offering to assist her up the stairs. The victim declined the offer and retired to her room with her sister to watch television. Id. at 700-701, 584 N.W.2d 760.
The victim fell asleep, fully clothed, on top of a bed while watching television. She testified that the next thing she recalled was being awakened by the sensation of someone kissing her. At that moment she realized she had been disrobed. *621 She observed the defendant, naked from the waist down. She testified that she feigned being asleep while defendant sexually assaulted her. She contended that she did not consent to the sexual relations, but did not scream or resist because she had never previously experienced sexual intercourse and feared harm at the hands of the defendant. Id. at 701, 584 N.W.2d 760.
According to the police, defendant initially denied any sexual contact with the victim, but subsequently admitted engaging in consensual sexual intercourse with her. Defendant did not testify at trial but presented a case that established consent as a defense. Ibid.
On appeal, defendant claimed that the victim's testimony and the prosecutor's repeated references to the victim's virginity denied him a fair trial. The Michigan Court of Appeals agreed. Ibid. In reversing defendant's conviction, the court held that M.R.E. 404(a)(3) prohibited the introduction of such evidence for the purpose of refuting the defense of consent.
M.R.E. 404(a)(3) provides:

Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:...
(3) Character of a victim of sexual conduct crime. A prosecution for criminal sexual conduct, evidence of a victim's past sexual conduct with defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy or disease.
The Michigan Court of Appeals interpreted M.R.E. 404(a)(3) "to preclude the use of evidence of a victim's virginity as circumstantial proof of a victim's current unwillingness to consent to a particular sexual act." Id. at 702, 584 N.W.2d 760. At trial, the prosecution initially sought to admit the evidence of the victim's virginity for the limited purpose of explaining inconsistencies in the victim's testimony regarding her statement to the police following the incident. Ibid. However, during the course of the trial, including both in the opening and in summation, the prosecutor argued the proposition that evidence of the victim's virginity was proof from which it could be inferred that she was less likely to have consented to sexual relations with defendant on the date in question. Ibid.
The Michigan Court of Appeals concluded that such evidence was not harmless and required reversal. Id. at 703, 584 N.W.2d 760. The court noted "as in many sexual assault cases, the principal issue confronting the jury in determining whether the victim consented to sexual relations with defendant was the credibility of the victim." Ibid. The court observed that at defendant's first trial, where such evidence was excluded, the jury was unable to reach a verdict on one count of sexual assault and acquitted the defendant on a second count. Id. at 704, 584 N.W.2d 760. The court noted that the only significant difference between the evidence presented at the two trials was the admission of the evidence of the victim's virginity. Ibid.
The court also distinguished an earlier Michigan case which held that the Michigan Rape Shield statute afforded no protections to an accused and thus did not prohibit a victim of a sexual assault from testifying about her lack of prior sexual activity. The court observed that the violation of M.R.E. 404(a)(3) was not addressed in the earlier decision. Id. at 702 n. 4, 584 N.W.2d 760.
However, in a recent decision, one state supreme court declined to follow Bone. In State v. Pugh, 640 N.W.2d 79 (S.D. 2002), the South Dakota Supreme Court ruled *622 that evidence of a victim's prior virginity was both relevant and admissible in a prosecution for sexual assault. The South Dakota court specifically ruled that neither South Dakota's counterpart to N.J.R.E. 404(a) nor that state's rape shield statute bars such evidence.
The issue in State v. Pugh, supra, developed against the following factual backdrop. The victim, M.H.L., operated a paper route in Rapid City, South Dakota. In the early morning hours on a frigid December day, M.H.L. encountered difficulty starting her car. After a period of time, two "good Samaritans" appeared and offered their assistance. Id. at 80. One of them, the defendant Pugh, offered to drive her to pick up her newspapers. After retrieving the newspapers, defendant suggested that he drive the victim on her route, which proposal was declined. Instead, M.H.L. requested defendant return to her residence to permit the retrieval of a bicycle to enable her to deliver the papers. Defendant, however, drove off in a different direction ultimately stopping at a remote area where he proceeded to sexually assault her. Id. at 81. In order to accomplish the assault, defendant threatened to shoot M.H.L. and subjected her to physical force beyond that necessary to accomplish penetration. Ibid.
The trial court granted a defense motion in limine precluding the prosecution from introducing evidence of M.H.L.'s virginity. Id. at 83. The trial court, relying upon People v. Bone, supra, concluded that such evidence was character evidence barred by S.D.L.C. § 19-12-4 [Rule 404(a)]. Ibid. The trial court also excluded the evidence under South Dakota's Rape Shield Law, S.D.L.C. § 23A-22-15. Ibid. Notwithstanding the trial court's ruling, the State proceeded to reference M.H.L.'s virginity before the jury. Id. at 84 n. 4.
The South Dakota Supreme Court concluded that S.D.L.C. § 19-12-14 [Rule 404(a) ] which excludes evidence of a person's character or trait of character, did not bar the introduction of evidence of a victim's prior virginity. Id. at 83. The court stated that "[i]n this case, a thirty year old victim's prior virginity is at least probative of the improbability that, on the spur of the moment on a sub-zero morning, she abandoned her employment and consented to sexual intercourse in a car... with an inebriated man she had only just met." Ibid.
The South Dakota Supreme Court also concluded that South Dakota's Rape Shield Law (S.D.L.C. § 23a-22-15) did not preclude evidence of the victim's virginity. Ibid. That statute provides, in pertinent part:
In prosecutions for a sex offense under [South Dakota law] evidence of specific instances of a victim's prior sexual conduct shall not be admitted nor reference made thereto before the jury or jury panel except as provided in this section. Whenever a party proposes to offer evidence concerning a victim's prior sexual conduct, the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of such evidence. Ibid.

As to this issue, the court stated:
[c]hastity, as much as promiscuity, may characterize a person's sexual conduct, so thatother things being equalevidence of either would be inadmissible. Other things are not equal however. The purpose of the rape shield law is not to bar people from flaunting their chastity or testifying to the loss of virginity, but to protect victims from the humiliation of having their unrelated sexual conduct paraded before juries. (citations omitted) Accordingly, this protection *623 should be subject to voluntary waiver by a victim in order to prove an element of the case. Ibid.

One of the problems with the decision of the South Dakota Supreme Court in State v. Pugh, supra, is the failure of the court to explicate the reasons why the victim's prior chastity is even relevant to prove a material fact in issue, that is, the lack of consent. The circumstances under which the sexual assault were alleged to have occurred in State v. Pugh, in and of themselves, present a compelling proposition that the victim would not have consented to the sexual encounter with the defendant. Engaging in sexual intercourse with an intoxicated stranger in an automobile on a frigid winter's morning is a highly improbable scenario, irrespective of the extent or lack of prior sexual experience.
The court's opinion also does not provide any analysis of the issue within the context of the general prohibition of the use of character evidence to prove specific conforming conduct. Id. at 83. By relying on cases decided within the context of rape shield laws, the South Dakota court appears to blend two related, but distinct concepts. The fact that such evidence is not barred by a rape shield statute, does not mean that it is otherwise admissible. Such evidence must still be evaluated under all appropriate evidence rules before it may be admitted into evidence.
This court declines to follow the ruling in State v. Pugh, supra, finding the decision of the Michigan Court of Appeals in People v. Bone, supra, to be persuasive, and a more reasoned result. Furthermore, the ruling is consistent with New Jersey's traditional approach to the exclusion of character evidence to prove subsequent conforming conduct.
N.J.R.E. 404(a), New Jersey's, like its Michigan counterpart, M.R.E. 404(a), also generally excludes character evidence offered to prove actions in conformity therewith on particular occasions. N.J.R.E. 404(a) provides:

Character Evidence Generally. Evidence of a person's character or a trait of his character, including a trait, of care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion ...
Both rules specifically exclude evidence of a person's character or a trait of character offered for the purpose of proving that a person acted in conformity therewith on a particular occasion; allow for various exceptions to the general prohibition, and treat in a similar fashion the issue of the character of an accused and character of a witness. See M.R.E. 404(a)(1) and M.R.E. 404(a)(4) and N.J.R.E. 404(a)(1) and N.J.R.E. 404(a)(3). Both rules similarly treat evidence of the character of a victim of a homicide. See M.R.E. 404(a)(2) and N.J.R.E. 404(a)(2).
New Jersey, unlike Michigan, did not adopt a specific evidence rule relating to evidence of the character of a victim of a sexual conduct crime. New Jersey specifically declined to adopt Rule 412, addressing the admissibility of evidence in prosecutions for rape related offenses, because such evidence is covered as substantive evidence under the Code of Criminal Justice, specifically N.J.S.A. 2C:14-7. See Biunno, Current N.J. Rules of Evidence (Gann), comments to Rule 412 (Gann).
New Jersey has developed a body of decisional law which has traditionally excluded character evidence offered for the purpose of proving actions in conformity therewith on particular occasions. This approach was well established under our former evidence rules. See State v. Mondrosch, 108 N.J.Super. 1, 4-5, 259 A.2d 725 (App.Div.1969); (precluding under Evid. *624 R. 22 and 47, evidence of a police officer's past false accusations to establish a false accusation against defendant); and see State v. Ryan, supra, at 125, 384 A.2d 570; (precluding under Evid. R. 47 and 22, evidence of specific instances of rape victims' consensual sexual intercourse with a person other than defendant, offered for the purpose of drawing an inference of consent in the present case).
One of the inherent dangers with the introduction of character evidence is its susceptibility to convert a trial of the issue to a judgment of the person. If it is fair to infer that evidence of prior chastity is relevant to establish a lack of consent on the part of an alleged victim, then is not the converse also true? Is it not equally probative that a person with a history of prior sexual conduct would be more likely to consent than one who has none? To ask the question invites the answer provided by our Supreme Court in State v. Budis, supra. Evidence of a victim's prior sexual conduct "was traditionally considered evidence of the victim's inclination to consent to sexual intercourse and of her lack of moral character and credibility. (citations omitted). Because of the `character assassination of the victim, rape trials sometimes degenerated to embarrassing invasions of the victim's privacy.'" (citations omitted). State v. Budis, supra, 125 N.J. at 528-529, 593 A.2d 784. Consequently, rape shield statutes were enacted to "guard against the improper use of evidence of the victim's prior sexual experience... thus `insuring that juries will not base their verdicts on prejudice against the victim.'" Ibid.
If evidence of prior sexual experience should be excluded to insure jury verdicts free from the taint of prejudice against the victim, then, so too should evidence of prior chastity be excluded to insure that such verdicts are not tainted based upon prejudice for an alleged victim.
[3] Consequently, this court concludes that the State's proffer of evidence of the victim's virginity prior to the alleged assault and the inference that it intends to urge the jury to draw therefrom, constitutes the type character evidence prohibited by N.J.R.E. 404(a). Accordingly, the State is precluded from introducing evidence from either the victim or others as to her sexual status prior to the alleged assault.